718 P.2d 206

**In re the Marriage of Tania J. VALLA-DEE, Petitioner-Appellant, Cross Appellee,**

v.

**Frank H. VALLADEE, Respondent-Appellee, Cross Appellant.**

**No. 1 CA–CIV 7908.**

Court of Appeals of Arizona, Division 1, Department A.

Feb. 25, 1986.

---

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears, P.C. by Brian E. Kelley, Christina L. Sundlof, Phoenix, for petitioner-appellant cross appellee.

Kessler Law Offices by Walter F. Kessler, Scottsdale, for respondent-appellee cross appellant.

## OPINION

BROOKS, Judge.

This is an appeal and cross-appeal from a decree dividing several tracts of jointly held real property between appellant-cross appellee (wife) and appellee-cross appellant (husband). The facts are as follows.

Frank and Tania Valladee were married in Utah in 1966 and later moved to Arizona. At the time of dissolution of the marriage they had four children. Husband, a Ute indian, maintained an account with the Bureau of Indian Affairs (BIA account) into which the Ute tribe deposited money from time to time. Husband had maintained this BIA account since his childhood as his sole and separate property. Subsequently, he inherited two parcels of tribal land which he sold back to the tribe for $50,000. This money was placed in the BIA account as husband's separate property.

In 1977 or 1978, husband withdrew $60,000 from the BIA account for a down payment on five separate parcels of real property. He had each parcel deeded to himself and his wife as joint tenants. Husband also established a business account in which he kept rental income from the jointly held investment properties and whatever investment funds he had transferred from the BIA account. This account was also placed in joint tenancy with wife but was kept meticulously separate from community accounts and was used solely for the maintenance and management of the jointly held investment properties. Husband spent a substantial amount of his time and skill in managing the investment properties and business account. At no time did the parties discuss the characterization of either the investment properties or business account as either separate or community property. Wife assumed that she was taking an equal interest in the investment properties and business account as they were placed in joint tenancy. At trial, however, husband consistently maintained that he had meant to keep the properties and business account as his separate property and that he had only placed them in joint tenancy to avoid probate and to give his wife "security" in the event of his death.

Husband subsequently acquired additional investment properties through the business account, all of which were placed in joint tenancy with wife. At the time of dissolution, twelve parcels were held by the parties as joint tenants.

On October 1, 1982, wife left the community home, taking with her over $11,000—$10,000 of which was withdrawn from the business account. Almost all of this money was spent in the ensuing two month period, a significant portion on clearly non-community expenses. Wife soon thereafter filed for dissolution.

The major dispute in the trial court concerned the nature of the jointly held properties, which constituted the bulk of the marital estate.[1] The trial court found that placing the properties in joint tenancy, coupled with the expenditure of husband's personal time and skill, created a presumed gift to the wife. The trial court held that husband's contention that he had only placed the properties in joint tenancy in order to avoid probate and to give wife "security" was insufficient to overcome this presumption of a gift. However, the trial court specifically held that in making an equitable distribution of the marital assets, it could consider the initial source of the funds used to acquire the investment properties and then proceeded to make a "slightly unequal" distribution of the real property, giving husband approximately 62 percent of the jointly held property in order

---

1. The trial court divided the rest of the marital estate equally between the parties and no issue is raised as to this division. Moreover, of the twelve jointly held parcels, one was the community residence. Husband conceded that he intended to give wife an equal interest in this property by placing it in joint tenancy. Unlike the other parcels, which were held for investment purposes, community assets were expended towards its purchase and upkeep. We thus concern ourselves solely with the disposition of the investment properties.

to "reimburse" him for his "clearly sole and separate funds." [2] Both parties now appeal.

Two issues are presented on appeal. The first is whether the trial court abused its discretion when it found that placing the investment properties in joint tenancy created a presumption of gift to the wife which the husband failed to overcome. The second issue is whether the trial court abused its discretion by effectively reimbursing the husband for his expenditures of separate funds in the acquisition of the jointly held property.

## I.

◼ It is clear that the trial court acted well within its discretion when it found that placing the investment properties in joint tenancy created a presumption of gift to the wife which husband failed to overcome. The well established rule in Arizona is that a presumed gift occurs when one spouse places his separate real property in joint tenancy with the other spouse and that this presumption can only be rebutted by clear and convincing evidence to the contrary. *Becchelli v. Becchelli*, 109 Ariz. 229, 508 P.2d 59 (1973); *Battiste v. Battiste*, 135 Ariz. 470, 662 P.2d 145 (App.1983); *Sloane v. Sloane*, 132 Ariz. 414, 646 P.2d 299 (App. 1982). This presumed gift cannot be overcome simply by husband's after-the-fact testimony that the property was placed in joint tenancy only as a means of avoiding probate and not as an intended gift. *Sloane, supra.* In *Sloane*, quoting *Machado v. Machado*, 58 Cal.2d 501, 25 Cal. Rptr. 87, 90, 375 P.2d 55, 58 (1962), Division 2 of this court held that

> "[T]he presumption created by the [joint tenancy] deed cannot be overcome by testimony of the hidden intentions of one of the parties, but only by evidence tending to prove a common understanding or an agreement that the character of the

property was to be other than joint tenancy."

132 Ariz. at 416, 646 P.2d at 301.

The record in the case before us makes clear that there was no common understanding or agreement between husband and wife that the jointly held investment properties were anything but jointly owned. Indeed, wife testified that she believed she was taking an interest in the properties when she was asked to sign the joint tenancy deeds.

On appeal, we must view all the evidence and reasonable conclusions therefrom in the light most favorable to supporting the trial court's decision as to the nature of the property as either community or separate. *Sommerfield v. Sommerfield*, 121 Ariz. 575, 592 P.2d 771 (1979). In light of this rule and the broad discretion given to the trial court in dissolution proceedings, see *Cockrill v. Cockrill*, 139 Ariz. 72, 676 P.2d 1130 (App.1983), *Nelson v. Nelson*, 114 Ariz. 369, 560 P.2d 1276 (App.1977), we find that the trial court acted well within its discretion when it found that husband made a gift to wife by placing the investment properties in joint tenancy.

## II.

◼ We find, however, that the trial court abused its discretion when it directed a substantially unequal distribution of the jointly held investment properties in order to "reimburse" husband for the expenditure of his separate funds in acquiring the properties. In reaching this result, however, we disagree with wife's rationale for denying reimbursement in this case.

Wife argues that husband is not entitled to reimbursement under the rule in *Baum v. Baum*, 120 Ariz. 140, 584 P.2d 604 (App. 1978), which held that one spouse may not receive reimbursement from the community for voluntary expenditures of separate

---

**2.** The exact value of each spouse's respective share of the joint property under the trial court's division varies depending upon whose figures are used. Wife contends that husband received property worth $244,000 while she received property worth only $150,700. This

leads to a difference of $93,300. Husband contends that the property in question depreciated significantly prior to trial. Under his figures, he received property worth $196,000 while wife received property worth $121,000. This gives rise to a difference of $75,000.

funds for community debts where there is no agreement between the parties permitting it. *See also, Mori v. Mori,* 124 Ariz. 193, 603 P.2d 85 (1979); *Wineinger v. Wineinger,* 137 Ariz. 194, 669 P.2d 971 (App. 1983). She argues that since no agreement existed between the parties here, no reimbursement may be given to husband for expending his separate funds to acquire the jointly held properties. Her argument is supported by the recent decision from Division 2 of this court in *Malecky v. Malecky,* 713 P.2d 322 (App.1985). There, the court found that a presumed gift to the community was created when husband placed real property acquired with his own funds in joint tenancy with his wife. The court then held that since no agreement existed between the parties, *Baum* applied and prohibited any reimbursement to the husband for his separate expenses in acquiring the property.

While *Malecky* appears to be dispositive of this appeal, we decline to follow it and choose to base our holding on different grounds. We do so for two reasons. First, we note that the rule enunciated in *Baum* prohibiting reimbursement between spouses has only been applied to situations involving voluntary expenditures of separate funds on *community* property or obligations. *See Mori, supra; Wineinger, supra; Baum, supra.* Here, however, the investment properties were held in *joint tenancy.* Secondly, the result reached in *Malecky* rested upon the assumption that the presumed gift which arises when one spouse places separate property in joint tenancy is a gift to the *community.* The import of this assumption is that the contributing spouse's separate property is converted into community property rather than property held in joint tenancy. We do not believe this to be a correct result under Arizona law.

We note that neither party has addressed the distinction between treating the investment properties in question here as community property rather than property held in joint tenancy. However, the distinction is an important one since the rules governing reimbursement differ depending upon the nature of the property.

Generally, where the subject property is community property, reimbursement of separate funds is not allowed under *Baum* without a prior agreement between the parties. However, where the property is held in joint tenancy, the law of joint tenancy applies and may permit reimbursement to the contributing co-tenant. The first issue to be addressed, then, is whether the presumption of a gift when one spouse places separate property in joint tenancy creates a gift to the community or to the other spouse individually as a joint tenant.

We have found only two cases, both from Division 2 of this court, which hold that the gift is one to the community. In *Ivancovich v. Ivancovich,* 24 Ariz.App. 592, 540 P.2d 718 (App.1975), the court held that the community residence, which had been purchased by the husband and deeded to both parties as joint tenants, was community property under the presumption that husband was discharging his duties to his wife by making a gift of the property. In *Malecky, supra,* the court stated that "when one spouse pays for real property which is then taken jointly in both spouses names, the presumption is that *a gift to the community* was the intention of the paying spouse." *Malecky,* at 324 (emphasis added.)

We find these cases to be contrary to the majority view on this subject. The majority and better view is that the gift is to the noncontributing spouse individually as a joint tenant rather than to the community in general. *See e.g., Battiste v. Battiste,* 135 Ariz. 470, 472, 662 P.2d 145, 147 (App. 1983) ("it would appear that from the face of the joint tenancy conveyance, a gift is intended *to the noncontributing grantee*") (emphasis added); *Sloane v. Sloane,* 132 Ariz. 414, 646 P.2d 299 (App.1982) (appellant's separate funds used to purchase joint property—trial court properly treated the property as joint tenancy property); *Batesole v. Batesole,* 24 Ariz.App. 83, 86, 535 P.2d 1314, 1317 (App.1975) (Froeb, J., concurring: "It is presumed that a spouse

who supplies the entire consideration for the acquisition of jointly held real property has made a gift of an undivided one-half thereof to the other spouse"). Such an approach fits better with the rule traditionally followed in Arizona that the legal consequence of holding property jointly is that each spouse takes an undivided *separate property* interest in one-half of the property. *See Becchelli v. Becchelli,* 109 Ariz. 229, 508 P.2d 59 (1973); *Collier v. Collier,* 73 Ariz. 405, 242 P.2d 537 (1952); *Blaine v. Blaine,* 63 Ariz. 100, 159 P.2d 786 (1945); *Oppenheimer v. Oppenheimer,* 22 Ariz. App. 238, 526 P.2d 762 (App.1974). Further, the parties' intention in the case at hand is made clear by the language of the joint tenancy deeds themselves, which contain the usual "boilerplate" language, universally employed in Arizona joint tenancy deeds, that the parties were taking the properties as joint tenants with the right of survivorship, and not as community property or as tenants in common. We hold, therefore, that when one spouse places his or her separate property in joint tenancy with the other spouse, he or she is presumed to have made an individual gift to the noncontributing spouse, as a joint tenant, of one-half of the property. The property is thus converted from the separate property of the contributing spouse into the joint property of both spouses with each being treated as a joint tenant upon dissolution.

■ Upon dissolution, A.R.S. § 25–318(A) states that jointly held property shall be divided "equitably" between the parties. Generally, the courts have interpreted this to mean a "substantially equal" division unless some sound reason exists for a contrary result. *See In re Marriage of Berger,* 140 Ariz. 156, 680 P.2d 1217 (App.1983); *Wineinger v. Wineinger,* 137 Ariz. 194, 669 P.2d 971 (App.1983); *Tester v. Tester,* 123 Ariz. 41, 597 P.2d 194 (App. 1979). We find that under § 25–318(A) the trial court abused its discretion in the instant case when it ordered a substantially unequal division of the jointly held proper-

ties solely to "reimburse" husband for expending his separate funds in acquiring the properties. We find that such a distribution is inequitable as a matter of law for two reasons.

■ First, while § 25–318(A) makes jointly held property susceptible to the same equitable division as community property, we do not believe it eliminates the distinctions between the two forms of ownership. Arizona has long recognized that the general rules of joint tenancy apply between husband and wife. *Collier, supra; In re Berger, supra; Bowart v. Bowart,* 128 Ariz. 331, 625 P.2d 920 (App. 1980); *Graham v. Allen,* 11 Ariz.App. 207, 463 P.2d 102 (1970). Thus, some consideration must be given to the general principles of joint tenancy law when dividing jointly held property under § 25–318(A).

Under the general rules of joint tenancy, a tenant has a right to contribution from his cotenants for expenditures or obligations made for the benefit of the common property. *Collier, supra; Graham, supra; see generally* 20 Am.Jur., *Cotenancy and Joint Ownership,* § 58 (1965). However, before a tenant can claim a right to such contribution, it must appear that there existed a common obligation or liability among the cotenants at the time the contributing tenant made the expenditure or incurred the obligation. *See Ocean Accident & Guarantee Corp. v. United States Fidelity & Guaranty Co.,* 63 Ariz. 352, 162 P.2d 609 (1945); *King v. King,* 163 Or. 84, 95 P.2d 66 (1939); 20 Am.Jur.2d, *Cotenancy and Joint Ownership,* § 59 (1965); *see also,* 18 Am.Jur.2d, *Contribution,* § 9 (1985). Here, no such common obligation or liability existed between the parties at the time husband expended his separate funds to purchase the investment properties. Only when the properties were placed in joint tenancy did wife take an interest in them through a gift from husband. This occurred only after husband expended his separate funds for the down payments on the properties.[3] Under the

---

**3.** We stress that, from the record, it appears that    husband used his separate funds only to pay for

general law of joint tenancy, therefore, husband has no right to seek contribution from his wife.

■ Secondly, the trial court's reimbursement scheme clearly conflicts with the legal presumption of a gift to wife as a result of placing the properties in joint tenancy. The gift to the wife of an interest in the property clearly encompasses any monies spent in the past by husband in order to acquire it. Thus, to award husband reimbursement here for the sole reason that he used his own funds to acquire the joint properties is, without more, inconsistent and inequitable.[4]

While husband points to several Arizona cases in support of his argument that "reimbursement" of the purchase price to a contributing spouse through unequal distribution of joint property is allowed in cases such as the one at hand, we find these cases to be distinguishable.

In *Wayt v. Wayt*, 123 Ariz. 444, 600 P.2d 748 (1979), our supreme court held that the trial court's award of the entire jointly held marital home to the wife was not an abuse of discretion. However, while husband in the instant case places great emphasis on *Wayt*, we do not find it persuasive on the issue of reimbursement for several reasons. First, and most importantly, no issue as to reimbursement for a presumed gift of separate property was raised or addressed in *Wayt*. Thus, the issue before us now was not analyzed by the supreme court. Rather, the principle issue in *Wayt* was whether the August 8, 1973 amendment to A.R.S. § 25–318, which empowered the trial court to divide joint property as it would community property, applied where the purchase agreement for the property was executed prior to the effective date of the

statute. The court held that the amendment applied because the purchase agreement gave the parties only equitable rather than legal title. Secondly, there is no argument in *Wayt* that the trial court made a substantially unequal division of the overall marital estate, as was done here. Only the unequal division of the jointly held home was at issue in *Wayt*. Apparently husband received other marital assets to make up for the unequal division of the house. He received real property in Virginia which had originally been purchased with wife's separate funds and placed in both parties' names as tenants by the entirety. Moreover, the court expressly held that the husband's contributions to the jointly held home had been "recompensed" in the overall property division. 123 Ariz. at 446, 600 P.2d at 750. This contrasts sharply with the present case. Here, the result of the trial court's unequal division of the joint properties is a substantially unequal division of the overall marital estate.

Husband also relies on *In re Marriage of Berger*, 140 Ariz. 156, 680 P.2d 1217 (App. 1983). In that case, this court held that a wife was entitled to an unequal division of the jointly held residential lot and residence in order to reimburse her for her separate property expenses in improving the property. However, we fail to see how this case supports husband's position on the theory of reimbursement in the instant matter. The holding in *Berger* rested upon two factors. The first was that the wife had an existing right to contribution from her husband under general joint tenancy law. The second was that there was no presumed gift to the husband of the wife's *improvements* to the property *after* it had been acquired. The rationale for this rule is

---

the initial downpayments on the various investment properties, an amount which totalled $60,000.

**4.** Even if reimbursement to husband for his $60,000 expenditure was permissible, we note that under the trial court's apportionment, husband received property valued at least $75,000 more than the property awarded to wife. (See computations in footnote 2, *supra*). The purpose of this $15,000 differential is not explained

by the record. It does not appear that it was the trial court's intention to award husband additional property in order to reimburse the community for the funds wife removed from the "business account." The trial court's decree evidently awarded husband 100 percent of his deferred retirement compensation fund, with a present value of $5,000, in order to compensate him for wife's noncommunity expenses.

that to apply the presumption of a gift to improvements of joint property would deny the contributing spouse's right *as a joint tenant* to seek reimbursement. 140 Ariz. at 161, 680 P.2d at 1222. The basis of the *Berger* holding, then, was that since no presumption of a gift occurred, the contributing spouse was free to exercise her existing right as a joint tenant to seek reimbursement for her separate property expenses. Here, however, the opposite is true. Husband has no existing right to reimbursement under joint tenancy law. Moreover, we are not dealing here with any of husband's separate funds being used to *improve* the jointly held properties *after* acquisition. Rather, the contention is that husband used his separate funds to acquire the properties as his own.

While in *Berger*, we cited *Wayt* for the proposition that courts may consider each party's respective contributions toward acquiring property in reaching an equitable division, *Berger*, 140 Ariz. at 169, 680 P.2d at 1230, we note that this statement was made in reference to the division of community personalty—namely, furniture, furnishings, and artwork—rather than jointly held real property. The presumption of a gift to the other spouse through a joint tenancy deed was thus not dealt with.

Finally, husband cites *Bowart v. Bowart*, 128 Ariz. 331, 625 P.2d 920 (App.1980), in support of his right to reimbursement. In *Bowart*, Division 2 of this court found that a gift to the husband of one-half of a particular parcel of property was created when title was taken jointly between the parties. However, the court permitted the wife reimbursement for mortgage and tax payments made from her separate funds on the property under the principle of joint tenancy law that:

> When one joint tenant expends sums to benefit the other joint tenant, as appellee did here by using her separate funds to pay *the joint obligation*, the paying joint tenant is entitled to reimbursement.

128 Ariz. at 337, 625 P.2d at 926 (Emphasis added).

While we agree with the result in *Bowart*, we fail to see how it supports husband's position in the instant case. The reimbursement permitted to the wife in *Bowart* was premised on the fact that the wife spent separate funds to satisfy an existing *joint* obligation. As already noted, in the present case there was no such common obligation between the parties at the time husband voluntarily expended his separate funds to acquire the investment properties. Wife had no interest in, or obligation for, the properties as she was not yet a joint tenant.

In summary, we find that the trial court abused its discretion when it ordered a substantially unequal distribution of the jointly held investment properties solely in order to reimburse husband for expending his separate funds to acquire them. We therefore reverse the trial court's division of the investment properties and remand with an order directing an equitable division of the properties between the parties in accordance with this opinion and pursuant to A.R.S. § 25–318(A).

### III.

In light of the substantial property distributed to each party in this case, and the trial court's denial of any attorney's fees, we deny both parties' respective motions for attorney's fees on appeal.

Reversed and remanded.

GREER, P.J., and YALE McFATE, J. (Retired), concur.

NOTE: The Honorable Yale McFate, a retired judge of a court of record, was authorized to participate by the Chief Justice of the Arizona Supreme Court pursuant to Arizona Const. art. VI, § 20.