733 P.2d 310

**Elizabeth S. WHITMORE, fka Elizabeth S. Mitchell, Petitioner/Appellant,**

v.

**James Waldo MITCHELL, Respondent/Appellee.**

**No. 2 CA–CV 5848.**

Court of Appeals of Arizona, Division 2, Department A.

Jan. 29, 1987.

Cromwell & U'Ren, Tucson by Stephen U'Ren, for petitioner/appellant.

John Wm. Johnson, Tucson, for respondent/appellee.

OPINION

HATHAWAY, Chief Judge.

This case involves the question of whether the trial court abused its discretion in dividing certain real properties upon dissolution of a marriage. Appellant argues that the distribution was inequitable in violation of A.R.S. § 25–318. Appellant also complains about the ordered payment terms. Because we agree with appellant, although in part for different reasons, that the trial court abused its discretion in dividing the real property, we need not reach the latter contention.

Before the parties' May 26, 1984, marriage, they entered into a prenuptial agreement, dated May 24, 1984, for the stated reason of protecting their separate property. The agreement essentially provided that property each held prior to marriage would remain that person's separate property, any income or wages either earned during the marriage would be that person's separate property, and that if they chose to title property in their joint names such title designation would control the true ownership.

During their short marriage, the parties took title to three pieces of real property as joint tenants with rights of survivorship, stating this was not as tenants in common or as a community property estate. These properties were a residence at 1409 E. Lee Street, a residence at 6110 San Marino, and the Grant Road Car Wash, located at 3601 E. Grant Road. Appellant separately owned the Lee Street property before the marriage. She changed the title while married to appellee. Appellee used his separate funds to make the initial payment on the San Marino residence. Appellant purchased the Grant Road Car Wash with her separate funds. The parties made payments on all three properties while married.

On September 19, 1985, appellant filed for divorce. Subsequently, she moved for partial summary judgment, requesting that the superior court rule that the three properties in question be designated as community property, given the unequivocal language of the prenuptial agreement and the Arizona caselaw presumption of community property when real property is jointly titled. Appellee opposed this motion on the ground that the parties only agreed to put the properties in joint tenancy because neither could qualify for the necessary financing, or refinancing, on their own, and that the properties were, therefore, equitably owned as separate property by the individual that initially contributed his or her separate funds. Both parties stipulated that the agreement was valid. A judge other than the one presiding at trial granted appellant's partial motion for summary judgment and ordered "that the three properties ... be treated for all purposes as being owned in accordance with the actual title designation, pursuant to the parties' Pre-Nuptial Agreement...."

At trial, after both parties stipulated that the car wash was no longer an asset, two pieces of jointly owned property, the Lee Street and San Marino residences, were left to divide. The court awarded appellant the Lee Street property and appellee the San Marino property. It also ordered that appellee satisfy appellant's interest in the San Marino residence by paying her $13,000 over a four-year period at 8% interest. The court denied appellant's motion to reconsider, specifically stating that "the evidence produced at the time of trial was sufficient to override the presumption that a gift to the community was created when respondent took title to the real property located at 6110 San Marino ... as joint tenants with the right of survivorship. It appears from testimony of both parties that taking title as joint tenants was merely for and as a matter of convenience, and the Court feels that the presumption that a gift occurred has been rebutted."

Appellant claims that the court erred in distributing the properties in question because the Lee Street residence has little or no equity and the San Marino residence has an equity of approximately $52,500 to $72,-500. Therefore, she essentially received $13,000 while appellee was awarded $39,-500 to $59,500 worth of equity. She rea-

sons that the only possible explanation for this disparate distribution is that the court wished to reimburse appellee for his initial separate property expenditure for the San Marino resident, a reimbursement contrary to Arizona law.

 We believe the trial court erred and determined title to the property upon a rebutted presumption. Although the prior partial summary judgment contains no Rule 54(b), Rules of Civil Procedure, 16 A.R.S., language, and was therefore not final and appealable, we believe it correctly held that the prenuptial agreement controls title as a matter of law. Prenuptial agreements control in Arizona when the contract is voluntary, free from fraud, and fair and equitable. *Spector v. Spector*, 23 Ariz. App. 131, 531 P.2d 176 (1975); A.R.S. § 25–201. The prenuptial agreement here provides:

[T]he Parties agree as follows:

\*　　\*　　\*　　\*　　\*　　\*

2. The Parties agree that all their property is now and will be hereafter titled in the separate name of the party who owns the property provided, however, that *if the Parties choose to title some property in their joint name, then such property will be treated for all purposes as being owned in accordance with the actual title designation.*

\*　　\*　　\*　　\*　　\*　　\*

9. It is agreed that in the event of the separation or divorce of the Parties, that neither party will be entitled to any property rights in the property of the Parties except as specifically provided in this Agreement.

10. No modification or waiver of any of the terms of this Agreement shall be valid unless in writing and executed with the same formality as this Agreement....

\*　　\*　　\*　　\*　　\*　　\*

16. This Agreement shall ... be incorporated in and become a part of any subsequent dissolution decree that may be entered concerning the Parties. (Emphasis added)

 Appellee agreed that it was his idea to enter into the agreement and conceded its validity. By the terms of the agreement, both the Lee Street residence and the San Marino residence were held by the parties as joint tenants with rights of survivorship.

There is much confusion in both the record and the pleadings as to the specific designation of the parties' interests. The terms "joint tenancy" and "community property" are often used interchangeably. The parties have not discussed the difference between defining their interests as joint tenancies or as community property estates, albeit appellant does cite the recent Division One case of *Valladee v. Valladee*, 149 Ariz. 304, 718 P.2d 206 (App.1986), which notes this as a most important distinction. We agree with the *Valladee* court's reasoning as to the difference.[1] The very reason for different ownership interests (for example, tenancy in common, joint tenancy, or community property) is because the law treats such interests differently.

 As appellant correctly notes, absent an agreement to the contrary, a court may not, upon dissolution, order a substantially unequal division of joint tenancy property solely for the purpose of reimbursing one of the parties for expending his or her separate funds to initially acquire the property. *Valladee, supra.* The same rule applies to community property. *Baum v. Baum*, 120 Ariz. 140, 584 P.2d 604 (App.1978). The rules for community property and joint tenancy, however, differ when it comes to expenditures made after the initial acquisition. *Baum, supra,* holds that such subsequent expenditures for the

---

**1.** We do not, however, agree with Valladee's criticism of *Malecky v. Malecky,* 148 Ariz. 121, 713 P.2d 322 (App.1985), and *Ivancovich v. Ivancovich,* 24 Ariz.App. 592, 540 P.2d 718 (App. 1975). The court mischaracterizes the nature of the deeds. In both cases, the property in question was jointly held by the parties as husband and wife, not as joint tenants with the right of survivorship.

benefit of community property may not be the subject of any reimbursement upon dissolution. However, in *Bowart v. Bowart,* 128 Ariz. 331, 625 P.2d 920 (App.1980), we stated that:

> When one joint tenant expends sums to benefit the other joint tenant, [for example] ... by using ... separate funds to pay the joint obligation, the paying joint tenant is entitled to reimbursement.

128 Ariz. at 337, 625 P.2d at 926.

The crucial distinction between an initial expenditure to acquire a joint tenancy asset and subsequent expenditures to satisfy existing joint obligations is that there can only be a right to reimbursement when a joint obligation exists. The obligation does not come into existence until the property is purchased. *Valladee, supra.* Accordingly, appellee is entitled to no reimbursement for any sums he spent to acquire the San Marino residence.

■ A.R.S. § 25–318(A) mandates equitable distribution of joint tenancy assets upon dissolution, absent fraud, excessive or abnormal expenditures, destruction, or concealment. While the record reflects no evidence of these special situations, and Arizona caselaw has interpreted § 25–318(A) as requiring a substantially equivalent distribution, *Hatch v. Hatch,* 113 Ariz. 130, 547 P.2d 1044 (1976), we note that a court may consider the expenditure of separate funds for the purpose of fulfilling *existing* joint obligations in accord with *Valladee* and *Bowart.*[2]

We hold that the trial court abused its discretion in deciding that the evidence in the record overcame the rebuttable presumption that appellee made a gift to the community (or more correctly, a gift to appellant of an undivided one-half joint tenancy interest) and distributing the property in accordance with this decision. We cannot tell whether the court was attempting to reimburse appellee for his initial expenditure of separate funds or simply treating

the San Marino residence as appellee's separate property, awarding appellant some sort of lien against it. Either method of distribution is erroneous. We therefore vacate that part of the court's order dealing with the Lee Street and San Marino Street residences and remand for a division in accordance with our opinion.

HOWARD, P.J., and FERNANDEZ, J., concur.

---

2. The record demonstrates that appellee claims to have made continuing payments upon the property from his separate bank account. However, he also deposited proceeds from a joint tenancy asset, the car wash, in the same bank account. Therefore, upon remand, he will bear the burden of proving that the latter payments were made out of purely separate funds.