946 P.2d 900

**In re the Marriage of Anthony TOTH, Petitioner–Appellee,**

v.

**Gloria Snyder TOTH, Respondent–Appellant.**

No. CV–96–0322–PR/A.

Supreme Court of Arizona, En Banc.

Oct. 9, 1997.

Dean J. Werner, Mesa, for Anthony Toth.

Thomas M. Shaw, Mesa, for Gloria Snyder Toth.

## OPINION

MARTONE, Justice.

We granted review to decide whether an equitable distribution of marital joint property upon dissolution under A.R.S. § 25–318(A) requires an equal distribution of the assets in this case. We conclude that it does not. We also hold that joint tenancy property and community property should be treated alike under A.R.S. § 25–318(A).

### I. Introduction

Anthony Toth and Gloria Snyder Toth met at a senior citizens dance in Mesa in 1992. Anthony was 87 and Gloria was 66. They married a year later on December 13, 1993. The following day, Anthony used $140,000 of his sole and separate funds to buy a house for the couple. They took title as joint tenants with the right of survivorship. About two weeks later, Anthony moved out of the marital bedroom, and on January 10, 1994, he filed for an annulment. The court ultimately entered a final decree of dissolution on September 19, 1995. The house was the only property to be divided. The court awarded Gloria $15,000 as her share. She appealed.

The court of appeals decided that A.R.S. § 25–318(A)[1] requires a substantially equal division of joint property, absent sound reason to the contrary. The court indicated that sound reason is limited to the statutory factors of fraud, excessive or abnormal expenditures, destruction, or concealment. It then held that the trial court had abused its discretion in ordering a substantially unequal division of the property and reversed. Judge Kleinschmidt dissented, believing that "equitable" had a broader meaning than the majority gave it. Believing that an important issue of law had been decided incorrectly, we granted Anthony's petition for review. Rule 23(c)(4), Ariz. R. Civ.App. P.

### II. Analysis

A. Treatment of joint tenancy property under A.R.S. § 25–318

Gloria argues that the gifted portion of the property is her sole and separate property and, therefore, the court must award her half its value under A.R.S. § 25–318(A).

Section 25–318(A) provides that "the court shall assign each spouse's sole and separate property to such spouse." It then provides that the court shall "divide the community,

---

1. Section 25–318(A) provides that:

In a proceeding for dissolution of the marriage, or for legal separation ... the court shall assign each spouse's sole and separate property to such spouse. It shall also divide the community, joint tenancy and other property held in common equitably, though not necessarily in kind, without regard to marital misconduct.... Nothing in this section shall prevent the court from considering excessive or abnormal expenditures, destruction, concealment or fraudulent disposition of community, joint tenancy and other property held in common.

joint tenancy and other property held in common equitably, though not necessarily in kind, without regard to marital misconduct."

Joint tenancy property is separate, not community, property. *Becchelli v. Becchelli,* 109 Ariz. 229, 234, 508 P.2d 59, 64 (1973); *Collier v. Collier,* 73 Ariz. 405, 411, 242 P.2d 537, 541 (1952). *See* Richard W. Effland, *Arizona Community Property Law: Time for Review and Revision,* 1982 Ariz. St. L.J. 1, 11–14. Although joint tenancy property is considered separate property, section 25–318(A) treats it in two ways—first by stating that separate property is assigned to the owner spouse, then by directing that joint tenancy property be divided equitably.

Before 1973, section 25–318(A) did not include joint tenancy property in the equitable (then "just and right") division, and, as now, prohibited divesting either spouse of separate property upon dissolution. From that, we concluded that joint tenancy property could not be divided equitably. *E.g., Becchelli,* 109 Ariz. at 234, 508 P.2d at 64; *Collier,* 73 Ariz. at 412, 242 P.2d at 542. The statute now expressly lists joint tenancy property as part of the property to be equitably divided. In *Wayt v. Wayt,* 123 Ariz. 444, 445, 600 P.2d 748, 749 (1979), we held that the modification of section 25–318 allowed joint tenancy property to be divided upon dissolution "in the same manner as . . . property held by the community or in common." We did not address the potential anomaly in treating separate property as community property upon dissolution.

From the 1973 modification, one could argue that the legislature abrogated the rule that joint tenancy property is separate property. But whether property is treated as separate or community has consequences beyond dissolution, particularly with respect to tax liability and the rights of creditors. *See* Charles Marshall Smith, *Arizona Community Property Law* §§ 4:4, 4:5 (1995). The statute does not provide that marital joint tenancy property is now, in all respects, community property. It only allows it to be treated as community property upon

dissolution. Joint tenancy property remains separate property, but is excepted from the requirement that separate property be assigned to each spouse separately upon dissolution. Justice Holohan observed in his dissent in *Becchelli,* 109 Ariz. at 236, 508 P.2d at 66, that a 1962 amendment to section 25–318[2] gave the court "the opportunity to make an equitable distribution of all the [joint] property even though some of the property would be in the category of separate property rather than community." Joint tenancy property would remain separate property during marriage, and upon dissolution, "the court may not divest a person of separate property except the listed forms of joint ownership and as to these the court may divide the property in the same fashion as the community property." *Id.* The 1973 amendment to the statute achieved this result.

█ Thus, under the statute, joint tenancy property and community property are to be treated alike only for dissolution purposes. For that purpose, the court should divide all such property equitably. We thus reject Gloria's argument that we must treat her share of property held in joint tenancy as separate property upon dissolution.

█ Gloria also argues that because her share of the property is designated as a "gift" from Anthony, it should be considered irrevocable under the law of gifts. Ordinarily, when property is purchased in the name of one person with money furnished by another, a resulting trust arises in favor of the person furnishing the purchase money. *Becchelli,* 109 Ariz. at 232, 508 P.2d at 62; *Restatement (Second) of Trusts* § 440 (1959). But in the marital context, the presumption changes.

█ When one spouse buys property with separate funds and places it in joint tenancy, there is a presumption that the spouse intended to make a gift to his spouse of one-half of the property. *Becchelli,* 109 Ariz. at 232–33, 508 P.2d at 62–63; *Valladee v. Valladee,* 149 Ariz. 304, 308, 718 P.2d 206, 210

---

**2.** That amendment gave courts the authority to "order division of [joint] property, or enter an order directing partition of such property."

A.R.S. § 25–318(A) (1962); *Becchelli,* 109 Ariz. at 233, 508 P.2d at 63.

(App.1986). But gifts of joint tenancy property are not irrevocable inter vivos transfers. They are made in expectation of a permanent relationship, but if cut short, fully subject to equitable divestment under the statute. Since marital joint tenancy property is subject to equitable division upon dissolution generally, if we treated "gifted" joint tenancy as requiring an equal, not equitable, division, we would be giving greater property rights to a non-contributing spouse than to a contributing one. Instead, the "gift" in the non-purchasing spouse of joint tenancy property is an equitable right in the property, not an irrevocably gifted interest in half. Under A.R.S. § 25–318, all marital joint tenancy property, "gifted" or otherwise, is to be divided equitably.

B. Meaning of equitable division under A.R.S. § 25–318

■ Although A.R.S. § 25–318(A) requires an equitable division of joint property, it also provides that nothing shall prevent the court from considering "excessive or abnormal expenditures, destruction, concealment or fraudulent disposition" of the property in making that equitable division. Gloria argues that the statute requires an equal division of joint property absent exceptional circumstances. She contends that those circumstances are limited to the parties' relationship to the property, rather than to each other. She characterizes other factors, such as the duration of the marriage, as inquiring into fault, which the statute prohibits.

We disagree for two reasons. First, the legislature's intent that the division be equitable, not equal, is clearly evidenced by the legislative history of the dissolution statute. In 1973, a proposed version of the statute required an equal division of all common assets. S.B. 1007, as introduced, 31st Leg., 1st Reg. Sess. (Ariz.1973). Senator O'Connor then moved to replace "equally" with "equitably," to be defined as "equally absent compelling reasons to the contrary." Minutes of the Senate Judiciary Committee, Feb. 12, 1973, at 2. The version eventually adopted states only that the court shall make an "equitable" division. The legislature clearly

contemplated that the trial court should not be bound by any per se rule of equality, but rather intended the court to have discretion to decide what is equitable in each case.

Second, the statute does not limit the inquiry to conduct regarding the property. Instead, it expressly instructs the court to divide the marital property equitably. Although the statute forecloses an argument that the listed factors are not relevant, it does not purport to define the universe of relevance. "Equitable" means just that—it is a concept of fairness dependent upon the facts of particular cases.

■ This is not a departure from the general principle that all marital joint property should be divided substantially equally unless sound reason exists to divide the property otherwise. *E.g., Hatch v. Hatch,* 113 Ariz. 130, 133, 547 P.2d 1044, 1047 (1976). That approach simply reflects the principle that community property implies equal ownership. William Q. de Funiak & Michael J. Vaughn, *Principles of Community Property,* 1–3 (2d ed.1971). In most cases, therefore, an equal distribution of joint property will be the most equitable.

However, there may be sound reason to divide the property otherwise. The trial court has discretion in this decision. *Wayt,* 123 Ariz. at 446, 600 P.2d at 750; *Hatch,* 113 Ariz. at 133, 547 P.2d at 1047. The trial judge in this case found sound reason to divide the Toths' property unequally, and we agree.

■ In this case, equal is not equitable. Community property rests on the assumption that the two spouses worked together to accumulate property for the community, each contributing in pecuniary or other ways. Anthony paid for this property entirely from his separate funds. Gloria made no contribution—pecuniary or otherwise—to the purchase of the house. The marriage lasted two weeks, allowing no time for a marital relationship to develop, or for other equities to come into play. This is not a determination of fault; why the marriage dissolved is irrelevant. This unusual case is one of those "rare occasions when the circumstances and facts are such that, in all fairness to the parties,

the property should not be characterized as community and should, instead, be awarded [in large measure] to one spouse accordingly." Barbara J. Torrez, Comment, *Arizona Property Division Upon Marital Dissolution*, 1979 Ariz. St. L.J. 411, 437.

The court of appeals found that the trial judge's division in this case was contrary to *Whitmore v. Mitchell*, 152 Ariz. 425, 733 P.2d 310 (App.1987) and *Valladee v. Valladee*, 149 Ariz. 304, 718 P.2d 206 (App.1986). In those cases, the court of appeals found that the trial judge had abused his discretion by ordering an unequal division of joint tenancy property solely to reimburse the purchasing spouse. But in *Valladee*, the parties had been married for sixteen years and had four children. And in *Whitmore*, the parties had been married over a year, and had a prenuptial agreement regarding their property, which the trial judge ignored. In both cases, as is likely in any real marriage of any significant duration, other equities made a division based solely on reimbursement clearly inappropriate. The facts here, of course, are vastly different. This is not a case in which an equitable division is based "solely" on reimbursement. Source of funds can be a factor in determining what is equitable. *Wayt*, 123 Ariz. at 446, 600 P.2d at 750. The "marriage" lasted two weeks. Every judge who has reviewed this case saw that equal was not equitable. The trial judge so found. The majority of the court of appeals said it seemed "somewhat unfair" for Gloria to receive half the value of the house in these circumstances, but thought the law required that result. Mem. Decision at 3–4. The dissenting judge thought equitable was broader than equal. We agree that an equal distribution here is not equitable. Indeed, if this is not a case in which "equitable" means something other than "equal," we would be hard pressed to imagine one.

## C. Consideration of marital misconduct

◼ Gloria argues that the trial court made a finding of fault when it stated that she had not made a "good faith effort to create a viable marriage." Amended Decree of Dissolution of Marriage, Sept. 19, 1995, at 3. While the statement does connote fault, it

is unclear whether the trial court relied on it in dividing the property. The statement is part of the court's description of the facts of the case. But in its findings, the court noted only that the marriage was of extremely short duration, and that the husband had paid the entire purchase price of the house, as well as subsequent maintenance costs, solely from his separate property. We note that the court received evidence on the parties' ages, needs, health, income and personal situations. It heard evidence that Gloria sold her house, that Anthony continued to pay household expenses after he moved out and that Gloria lived in the house for 1½ years thereafter. The court found that Gloria should not receive an equal portion of the residence, and allocated $15,000 as her equitable share. Thus, it may be that the court did not use the "good faith" finding in dividing the property. But we cannot be sure.

## III.   Conclusion

We vacate the memorandum decision of the court of appeals and remand to the superior court for further consideration of the evidence in light of today's opinion. The court may allocate equitably rather than equally and the court may consider source of funds. The court may consider other equitable factors as they may bear on the outcome, but the court may not consider fault. It may be, that after reconsideration, the court will conclude that it did not consider fault and affirm its prior allocation. We remand only to ensure that fault played no role in the court's determination.

JONES, V.C.J., and FELDMAN, J., concur.

MOELLER, Justice, Dissenting.

I respectfully dissent. I do so because I believe the trial court's unequal division of the home is contrary to Arizona case law, to Arizona statutory law, and to basic principles of fairness and equity. In my view, the court of appeals correctly held that the case should be remanded with instructions for a substantially equal distribution. Mr. Toth chose to make a gift of one-half of the house to Mrs.

Toth.[1] Having chosen to make a gift, Mr. Toth seeks the help of the domestic relations court to compel Mrs. Toth to give it back. The majority opinion permits the trial court to order her to give it back despite established Arizona law prohibiting an unequal division for any of the reasons relied upon by the trial court.

A.R.S. § 25–318(A) ("the statute") does permit the trial court to divide joint tenancy property "equitably" rather than "equally." If the legislature intended by this statute to permit courts to order the disgorgement of gifts, it did not say so. Doubtless, the 1973 enactment of the statute [2] permitting equitable division of jointly held property was in recognition of the fact that married couples commonly use community funds to acquire joint tenancy property. In dissolution actions prior to enactment of the statute in 1973, courts could not order the parties to divest themselves of title to their separate property, and their interest in joint tenancy property was separate property. *Becchelli v. Becchelli*, 109 Ariz. 229, 233, 508 P.2d 59, 63 (1973); *see also, Schwartz v. Schwartz*, 52 Ariz. 105, 109, 79 P.2d 501, 503 (1938) (holding that a divorce court is without jurisdiction to award either party the separate property of the other). The statute was intended to alleviate some practical problems by permitting joint tenancy property to be divided equitably, but not necessarily in kind. As the *Valladee* case, *infra*, makes clear, the statute was never intended to convert property held in joint tenancy into community property. The statute only contemplates a significantly unequal distribution in cases of "excessive or abnormal expenditures, destruction, concealment or fraudulent disposition" of the property. A.R.S. § 25–318(A). None of the statutory elements permitting an unequal division are present here. What then justifies an unequal division? The trial court supported its unequal division of the property with the following findings:

> All the money used to purchase the residence located at 2303 North 76th Street was the sole and separate property of the Petitioner/Husband, Anthony Toth. The Respondent/Wife, Gloria Toth, did not contribute any money toward the purchase of the residence. The Respondent/Wife, Gloria Toth, did sell her former residence and is now receiving monthly payments from said sale.
>
> \* \* \*
>
> The parties lived together as husband and wife for only two weeks. For one additional week, Petitioner/ Husband, Anthony Toth, lived in a separate room in the marital residence. After approximately three weeks, Petitioner/Husband moved out of the marital residence and has lived in a separate residence since that time.
>
> \* \* \*
>
> Petitioner/Husband, Anthony Toth, expected that the parties would each make a good faith effort to live together as husband and wife for the rest of their lives. No evidence has been presented that Respondent/Wife, Gloria Toth, made a good faith effort to create a viable marriage.
>
> THE COURT FINDS that the facts and circumstances of this case indicate that this was a marriage of extremely short duration. Respondent/Wife contributed nothing economically either toward the purchase of the marital residence or toward the necessary expenses of utilities and taxes on the residence since its purchase, even though she has remained in the residence since January of 1994....
>
> THE COURT FURTHER FINDS it would be unjust enrichment and a windfall to Respondent/Wife to award her an equal disposition of the value of the marital resi-

---

1. Arizona law establishes that when Mr. Toth used his separate funds to purchase the home in joint tenancy, he presumptively made a gift of one-half of the home to Mrs. Toth. *Becchelli v. Becchelli*, 109 Ariz. 229, 232–33, 508 P.2d 59, 62–63 (1973); *Valladee v. Valladee*, 149 Ariz. 304, 308–09, 718 P.2d 206, 210–11 (App.1986). In the trial court, Mr. Toth made an unsuccessful attempt to rebut the presumption. In this court, Mr. Toth frankly admitted that he intended to make a gift to Mrs. Toth.

2. A.R.S. § 25–318 was enacted by Laws 1973, Ch. 139, § 2. Former § 25–318, enacted as part of the 1956 revision to Article 2 of Title 25, amended by Laws 1962, Ch. 45, § 1 and relating to division of property, was repealed by Laws 1973, Ch. 139, § 1.

dence. While this Court may not set aside a transaction merely because one of the parties to a marriage contract may have been imprudent or made a poor bargain, nonetheless, the Court must make an equitable disposition pursuant to A.R.S. sec. 25–318(A).

Any reasonable reading of these findings compels the conclusion that the trial judge made the unequal division because of some perceived fault on Mrs. Toth's part and to reimburse Mr. Toth because he paid for the house out of his separate funds. Under Arizona law, neither reason authorizes an unequal division of the joint tenancy property.

In *Valladee v. Valladee*, 149 Ariz. 304, 306–07, 718 P.2d 206, 208–09 (App.1986), the trial court ordered a substantially unequal distribution of jointly held property to reimburse the husband for the expenditure of his separate funds in acquiring the properties. The court of appeals, Division One, overturned the unequal distribution, finding it inequitable as a matter of law for two reasons. It first discussed the concept of joint tenancy:

> First, while § 25–318(A) makes jointly held property susceptible to the same equitable division as community property, we do not believe it eliminates the distinctions between the two forms of ownership. Arizona has long recognized that the general rules of joint tenancy apply between husband and wife. Thus, some consideration must be given to the general principles of joint tenancy law when dividing jointly held property under § 25–318(A).

*Id.* at 309, 718 P.2d at 211 (citation omitted). Under joint tenancy rules, "the legal consequence of holding property jointly is that each spouse takes an undivided *separate property* interest in one-half of the property." *Id.* (citation omitted). Additionally, although a tenant has a right to contribution from the co-tenants for expenditures and obligations of the property, that right does not begin until the properties are held in joint tenancy. Therefore, under the law of joint tenancy, one spouse has no right of contribution from the other spouse for the funds he or she expended before the property was held in joint tenancy. *Berger v. Berger*, 140 Ariz. 156, 161–62, 680 P.2d 1217, 1222–23 (App.1983).

The *Valladee* court next focused on the gift aspect of the case, which was identical to the situation here. It held that the trial court's reimbursement scheme conflicted with the presumption of a gift. "The gift to the wife of an interest in the property clearly encompasses any monies spent in the past by husband to acquire it. Thus, to award husband reimbursement here for the sole reason that he used his own funds to acquire the joint properties is, without more, inconsistent and inequitable." *Id.* at 310, 718 P.2d at 212 (footnote omitted).

Joint tenancy property is not identical to community property. Community property "rests on the assumption that the two spouses worked together to accumulate property for the community, each contributing in pecuniary or other ways." *See* maj. op. at 221, 946 P.2d at 903. Joint tenancy property, however, rests on no such assumption. In a marriage, when joint tenancy property is purchased with the separate funds of one spouse, one-half of the property is a presumed gift. *Becchelli*, 109 Ariz. at 232–33, 508 P.2d at 62–63; *Valladee*, 149 Ariz. at 308–09, 718 P.2d at 210–11. In the instant case, we have more than a presumed gift: we have an acknowledged intended, completed gift. Division Two of the court of appeals in *Whitmore v. Mitchell*, 152 Ariz. 425, 427, 733 P.2d 310, 312 (App.1987), like Division One in *Valladee*, also held that jointly held property may not be unequally divided for the purpose of reimbursing the party who supplied the purchase price.

I am unpersuaded by the majority's effort to distinguish *Valladee* and *Whitmore* on the ground that in those cases the unequal division was based "solely" on principles of reimbursement. *See* maj. op. at 221–222, 946 P.2d at 903–904. It is true that the courts used the word "solely" because in those cases the desire to reimburse the gifting party was the only reason advanced in support of the unequal division. But I read those cases as holding that reimbursement is an improper consideration and will not support an unequal distribution. Reimbursement clearly motivated the trial court here to unequally divide the property and that inequitable division should not be permitted to stand.

It is also clear from the trial court's findings that the unequal division was based, in part, on the trial court's perception that Mrs. Toth was more at fault than Mr. Toth for the failure of the marriage. I find nothing in the record that supports that view, but even if it is well-founded, it· is not a permissible reason for an unequal division. The statute upon which the majority relies to support the unequal division expressly precludes consideration of fault. *See* A.R.S. § 25–318(A) ("[The court] shall ... divide the community, joint tenancy and other property held in common equitably ... without regard to marital misconduct.") Similarly, Arizona case law precludes consideration of fault in making a property allocation. *Lee v. Lee,* 133 Ariz. 118, 121, 649 P.2d 997, 1000 (App.1982)(holding that the court should ordinarily attempt "a substantially equal division which neither rewards nor punishes either party"); *see also Styers v. Superior Ct.,* 161 Ariz. 477, 479, 779 P.2d 352, 354 (App.1989); *Biddulph v. Biddulph,* 147 Ariz. 571, 573, 711 P.2d 1244, 1246 (App.1985). Indeed, consideration· of fault in the division of marital property is precluded on constitutional grounds. *Hatch v. Hatch,* 113 Ariz. 130, 132–34, 547 P.2d 1044, 1046–48 (1976).

The majority readily acknowledges that fault, even if it exists, cannot support an unequal division. Maj. op. at 222–223, 946 P.2d at 904–905. The majority also acknowledges that the trial court used language indicating fault, but the majority concludes that it is "unclear" whether the trial court relied upon its finding of fault in dividing the property and concludes that "it may be that the [trial] court did not use" the finding. *Id.* The majority refers to other evidence before the trial court that it believes might justify the trial court's disparate distribution. *See* maj. op. at 223, 946 P.2d at 905. I fail to find the trial court's comments concerning Mrs. Toth's fault to be as antiseptic as does the majority. Since the only issue being addressed was division of the property, I rely on the language used by the trial court in dividing the property. I find no justification to speculate, as does the majority, that the trial court might have intended to rely on other unreferred-to evidence.

The trial court also found and relied upon the obvious: that this was a short marriage. The trial court obviously blamed Mrs. Toth for the brevity of the marriage. I find no authority for the proposition that a spouse must remain married for a certain number of years before her right to retain a gift vests, nor has the majority or Mr. Toth cited any. The marriage was as short for Mrs. Toth as it was for Mr. Toth. Because fault cannot be considered, I find no relevance to the length of the marriage.

Under Arizona case law, equitable division has been interpreted to mean a substantially equal division "unless some sound reason exists for a contrary result." *Valladee,* 149 Ariz. at 309, 718 P.2d at 211 (citations omitted). Length of marriage has never been held to constitute a "sound reason" to divide joint tenancy property other than substantially equally. Cases in which our courts have upheld unequal distributions have dealt with the factors given in A.R.S. § 25–318 that the court may legitimately consider. *See Martin v. Martin,* 156 Ariz. 452, 454–55, 457–58, 752 P.2d 1038, 1040–41, 1043–44 (1988) (court upheld giving wife sum of money to reimburse her for improper dissipation of community assets by husband); *Hrudka v. Hrudka,* 186 Ariz. 84, 93–94, 919 P.2d 179, 188–89 (App.1995) (court upheld husband receiving more assets than wife because trial court found waste on wife's part where wife transferred, concealed, and sold substantial assets in violation of a trial court order); *Kosidlo v. Kosidlo,* 125 Ariz. 32, 607 P.2d 15 (App.1979), *disapproved on other grounds,* 125 Ariz. 18, 607 P.2d 1 (trial court justified in concluding that equity favored distributing greater share of community assets to wife where husband refused to use checking account, insisted on cash transactions, secreted large amounts of cash, and evaded questions about community assets); *Lindsay v. Lindsay,* 115 Ariz. 322, 565 P.2d 199 (App.1977) (court directed trial court to award sum of money to wife representing her share of community's interest in an aircraft where her husband secretly sold aircraft during dissolution proceedings and lost the proceeds in gambling).

Factors permitting unequal distribution of joint tenancy property should be limited to

those enumerated in A.R.S. § 25–318(A), which should not be expanded to include perceptions of fault or evaluations of the length of the marriage. No § 25–318 factor exists here. Under the majority's length-of-marriage test, how long is long enough? The majority opinion states that gifts of joint tenancy property "are made in expectation of a permanent relationship, but if cut short, fully subject to equitable divestment under the statute." Maj. op. at 220, 946 P.2d at 902. Under this approach, joint tenancy property can always be divided unequally in any dissolution because the relationship, by definition, turned out not to be permanent. Such a result is totally at variance with Arizona law as it has existed to date. There are very few valid reasons to divide joint tenancy property unequally, because each spouse has a vested separate property interest in one-half of the property and A.R.S. § 25–318 does not change that well-established tenet.

In summary, no proper reason supports an order requiring Mrs. Toth to return the gift Mr. Toth chose to make. The court of appeals correctly concluded that a substantially equal division should have been ordered. The remand should be limited to ordering an equal division.

ZLAKET, C.J., concurs.