NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

THERESE ANN WHEELER, *Petitioner/Appellant,*

*and*

PAUL D. NORDINI, *Non-Party Appellant,*

*v.*

DEBRA LYNN DEXTER, *Respondent/Appellee.*

No. 1 CA-CV 21-0451 FC
FILED 8-9-2022

Appeal from the Superior Court in Yavapai County
No. V1300DO202080029
The Honorable Linda Wallace, Judge *Pro Tempore*

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED**

COUNSEL

Paul D. Nordini, Esq., Scottsdale
By Paul D. Nordini
*Attorney for Appellant/Non-Party Appellant*

Duenas Eden PLC, Phoenix
By Amy Olthouse Duenas
*Attorney for Appellee*

---

**MEMORANDUM DECISION**

Chief Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Angela K. Paton joined.

---

**C A T T A N I**, Judge:

¶1        Therese Ann Wheeler appeals from the decree dissolving her marriage to Debra Lynn Dexter.  Wheeler's attorney, Paul D. Nordini, appeals on his own behalf from the court's order imposing a monetary sanction against him personally.[1]  For reasons that follow, we affirm the sanctions order, but we vacate the decree's property division to the extent it fails to account for home equity and remand for further proceedings on that issue.

## FACTS AND PROCEDURAL BACKGROUND

¶2        Wheeler and Dexter were married in California in 2008.  The marriage was tumultuous, and the two lived separately for extended periods on several occasions.  They maintained separate bank accounts, and they managed their finances individually.

¶3        In mid-2019, Wheeler and Dexter moved to Cottonwood, where they purchased a house together.  Both took title to the property and signed on to the mortgage.  Only three months after closing, however, Wheeler moved out, and she served Dexter with a dissolution petition five months later in March 2020.

¶4        The night before the trial was scheduled to begin in March 2021, attorney Nordini filed a motion to continue the trial, explaining that he had mistakenly sent Wheeler's discovery and disclosure documents to the wrong email address, so Dexter had not received them.  He asked the court to grant a continuance to allow Wheeler to use the documents at trial and give Dexter time to review them.  Nordini also noted that a continuance would allow time to request additional bank statements from Dexter.  The court granted the continuance over Dexter's objection, reasoning that Wheeler should not suffer the consequences of Nordini's mistake.  The

---

[1]        Because Nordini appealed on his own behalf as well, we amend the caption as set forth above to add Nordini as a non-party appellant.

court also ordered as a sanction that Nordini pay the expenses Dexter incurred due to the mistake, including Dexter's lost wages and her attorney's reasonable fees for appearing for trial.

¶5        Wheeler and Dexter both testified at trial. Regarding the Cottonwood house, Dexter explained that she was able to secure a VA home loan with zero down payment because of her prior military service and that she had paid all closing costs and made all monthly payments. She testified that Wheeler had paid only $1,000 toward the purchase of the house. Wheeler confirmed that she paid $1,000 over the few months she lived in the house but did not contribute financially thereafter. Documents submitted at trial showed an original loan amount of just over $347,000, with over $345,400 outstanding as of November 2019. Neither side presented evidence of the home's value, although Dexter testified that a nearby home with a similar floorplan had sold for $390,000 just before the April 2021 trial.

¶6        The court entered a dissolution decree that, as relevant here, awarded the Cottonwood house (and associated mortgage debt) to Dexter and ordered her to refinance the home loan to remove Wheeler from the obligation. The court did not set a valuation date or calculate the community's share of equity in the home, and the decree did not divide or otherwise account for any equity. Additionally, the court calculated the amount of Nordini's monetary sanction as $1,693.84 ($553.84 for Dexter's eight hours of lost wages plus $1,140 for four hours of Dexter's attorney's time).

¶7        Wheeler timely appealed from the decree, and Nordini appealed from the sanctions award. We have jurisdiction under A.R.S. § 12-2101(A)(1). *See also Wieman v. Roysden*, 166 Ariz. 281, 284 (App. 1990) (non-party attorney may appeal from the portion of the judgment imposing sanctions against him personally).

## DISCUSSION

### I.    Cottonwood House.

¶8        Wheeler challenges only one aspect of the dissolution decree: disposition of equity in the Cottonwood house. Wheeler does not object to awarding Dexter title to the house (along with the outstanding mortgage debt) but argues that the court erred by doing so without accounting for and dividing the community's equity interest. We review the superior court's division of property for an abuse of discretion, considering the evidence presented in the light most favorable to upholding the ruling.

*Inboden v. Inboden*, 223 Ariz. 542, 544, ¶ 7 (App. 2010); *Boncoskey v. Boncoskey*, 216 Ariz. 448, 451, ¶ 13 (App. 2007).

**¶9**        Subject to exceptions not implicated here, all property (and debt) acquired during a marriage is presumed to be community property. A.R.S. § 25-211(A); *Flower v. Flower*, 223 Ariz. 531, 535, ¶ 12 (App. 2010); *Brebaugh v. Deane*, 211 Ariz. 95, 97–98, ¶ 6 (App. 2005); *see also* A.R.S. § 25-213(B) (property acquired after service of the dissolution petition is separate property). On dissolution, the superior court must divide all community property "equitably, though not necessarily in kind." A.R.S. § 25-318(A). Generally, this means that community property should be divided "substantially equally," although the court has discretion to order an unequal division if there is "sound reason" to do so. *Toth v. Toth*, 190 Ariz. 218, 221 (1997).

**¶10**        The parties here do not dispute that the house was a community asset: it was purchased during the marriage with community funds and titled in both spouses' names. *See* A.R.S. § 25-211(A); *cf. Sommerfield v. Sommerfield*, 121 Ariz. 575, 577–78 (1979). And although the evidence was exceptionally sparse on the home's value and outstanding debt on any given date, all indications were that the home held at least *some* equity subject to division. The court did not address how to calculate and divide any such equity (for example, by relying on the appraisal that Dexter would presumably need to refinance the home loan as ordered), and the court did not explain why it had not done so.

**¶11**        On appeal, Dexter proposes several justifications for denying Wheeler any share of the community's equity in the home. First—relying largely on assertions by counsel without record support—she asserts that the court opted to value the house as of the date of service of the dissolution petition, which, only eight months after purchase, would yield minimal equity. Even ignoring that there were several thousand dollars of principal payments over that period, while the superior court has the discretion to determine an appropriate valuation date, *see Sample v. Sample*, 152 Ariz. 239, 242 (App. 1986), the ruling here did not elect any date. Moreover, the service of the petition did not convert an existing community asset—like the Cottonwood house—into separate property. *See* A.R.S. § 25-211(B)(1).

**¶12**        Dexter further suggests, as she did at trial, that assigning all of the equity to her was proper because she made almost all payments toward the house. But even if Dexter authorized the payments, many of the payments appear to have been made with community funds. *See* A.R.S. § 25-211(A); *see also Andrews v. Andrews*, 252 Ariz. 415, 418, ¶ 13 (App. 2021)

4

(income earned during marriage is community property). Although Wheeler and Dexter maintained individual bank accounts and may have acquired some property while married but living "separate and apart," the property they acquired during marriage was nevertheless presumptively community property. *See* A.R.S. § 25-211(A); *see also Lynch v. Lynch*, 164 Ariz. 127, 129 (App. 1990) (noting that property acquired by spouses living "separate and apart" remains community property absent a decree of legal separation under A.R.S. § 25-313). To be sure, as Wheeler acknowledges, Dexter may be entitled to reimbursement for payments (made with separate property monies) to service the home loan (a community debt) and maintain the home (a community asset) during the pendency of the dissolution proceeding. *See Bobrow v. Bobrow*, 241 Ariz. 592, 596, ¶ 19 (App. 2017). But that falls short of justifying depriving Wheeler of any share of the equity.

¶13 Finally, Dexter posits that minimal equity, Dexter's payments, and the fact that Wheeler lived in the house for only three months justified an unequal property division. Even assuming that those would be appropriate considerations in isolation, *but see Toth*, 190 Ariz. at 221–22, the superior court's ruling here does not indicate that it was effecting an unequal division or explain why an unequal division would be equitable.

¶14 Accordingly, we vacate the property division to the extent it fails to address or account for the community's interest in the equity in the Cottonwood house. On remand, the superior court retains the discretion to set an appropriate valuation date, *see Sample*, 152 Ariz. at 242, consider and account for any separate property contributions to the community asset, *see Bobrow*, 241 Ariz. at 596, ¶ 19, consider an unequal division if appropriate, *see Toth*, 190 Ariz. at 221, or explain how allocating the equity to Dexter is offset by allocation of other community assets to Wheeler.

## II.     Monetary Sanction Against Nordini.

¶15 Nordini challenges the $1,693.84 monetary sanction imposed against him. He asserts that the trial continuance was occasioned by Dexter's intentional failure to properly disclose assets, not his inadvertent failure to timely respond to discovery requests, and that the sanction against him was thus improper. He further asserts that Dexter's fee application did not support the amount awarded. We review the imposition and amount of sanctions for an abuse of discretion. *See Taliaferro v. Taliaferro*, 188 Ariz. 333, 339, 341 (App. 1996).

¶16　　　　The superior court has the authority to sanction an attorney who fails to comply with disclosure or discovery rules or "is substantially unprepared to participate in a . . . trial." Ariz. R. Fam. Law P. 65(b), 76.2(a)(1), (3). In addition to other available sanctions, the court has discretion to order that the attorney compensate the other party for reasonable expenses, including attorney's fees, caused by the sanctionable conduct. Ariz. R. Fam. Law P. 65(b)(2), 76.2(c).

¶17　　　　Here, although Nordini now attempts to recharacterize the basis for his request to continue the trial, his motion and his initial statements at the hearing explained his failure to provide discovery and disclosure documents to Dexter and sought a continuance to permit the use of that information at trial. While Nordini also alleged that Dexter was hiding assets, both Dexter and her attorney avowed that all accounts had been disclosed. And the bank account Nordini points to as a significant "hidden" asset had in fact been listed as one of Dexter's trial exhibits months earlier. Moreover, Nordini offers no explanation for waiting until the eve of trial to raise a disclosure issue he had been aware of for weeks if not months.

¶18　　　　Nordini further suggests that Dexter's fee application did not provide a sufficient basis for the amount awarded. The court tailored the monetary sanction to amounts caused by Nordini's last-minute request to continue the trial: Dexter's lost wages and her attorney's reasonable fees for attending the scheduled trial. Ariz. R. Fam. Law P. 65(b)(2), 76.2(c). The affidavit supporting the fee request included a sworn statement that Dexter had taken a full day off work to attend the slated all-day trial, yielding the $553.84 loss for eight hours' wages that the court awarded. Additionally, counsel attached billing records—and included a sworn statement that Dexter incurred the fees listed—showing 6.5 hours of $285/hour work on the planned trial date for travel from Phoenix to the Camp Verde courthouse and participation at the hearing, of which the court awarded four hours. The affidavit and supporting documents provided the requisite basis for the $1,693.84 sanction.

¶19　　　　Accordingly, we affirm the monetary sanction imposed against Nordini.

## III.　　Attorney's Fees on Appeal.

¶20　　　　Dexter requests an award of attorney's fees and costs on appeal under A.R.S. § 25-324. Wheeler notes that Dexter's answering brief failed to include record citations as required by ARCAP 13 and seeks an

award of attorney's fees on that basis. Having considered the relevant factors and in our discretion, we deny both requests for fees. As the prevailing party, Wheeler is entitled to her costs on appeal upon compliance with ARCAP 21.

## CONCLUSION

**¶21** For the foregoing reasons, we vacate a limited portion of the decree's property division to the extent it fails to address or account for home equity and remand for further proceedings on that issue consistent with this decision. We affirm the sanction imposed on Nordini.



AMY M. WOOD • Clerk of the Court
FILED: AA