NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

In re the Matter of:

GERALD E. WILLIAMS, *Petitioner/Appellee,*

*v.*

LINDA P. STAPLEY-WILLIAMS, *Respondent/Appellant.*

No. 1 CA-CV 17-0360 FC

FILED 6-14-2018

---

Appeal from the Superior Court in Maricopa County
No. FN2015-090044
The Honorable William L. Brotherton, Jr., Judge (Retired)

**AFFIRMED**

---

COUNSEL

Jennings, Strouss & Salmon, P.L.C., Phoenix
By John J. Egbert
*Counsel for Petitioner/Appellee*

Berkshire Law Office PLLC, Tempe
By Keith Berkshire, Erica Gadberry
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge Paul J. McMurdie joined.

---

**W I N T H R O P**, Presiding Judge:

¶1          Linda P. Stapley-Williams ("Wife") challenges the superior court's ruling that a premarital agreement between herself and Gerald E. Williams ("Husband") was valid and enforceable. She also challenges the allocation of sales proceeds from real property, the award of attorneys' fees to Husband, and the amount of time given to her at trial. For the reasons stated below, we affirm the trial court's rulings on all issues.

## FACTS AND PROCEDURAL HISTORY

¶2          The parties were married in June 2003. Husband filed for dissolution in 2015, seeking to enforce a premarital agreement entered on the parties' wedding day and an "Agreement to Sell and Buy Certain Rights and Interests" entered in 2008 (the "2008 Agreement"). In response, Wife argued these agreements were not valid and enforceable.

¶3          Husband filed a motion for partial summary judgment, arguing the premarital agreement and 2008 Agreement were valid and enforceable. Finding a question of fact as to whether Wife was under duress when she signed the premarital agreement, the superior court denied the motion and held a two-day hearing to address only the validity of the agreements. The court found Wife failed to establish the premarital agreement was involuntary or unconscionable, and that any defects were cured when Wife signed the subsequent 2008 Agreement, which the court also upheld as valid. The court set another trial date to consider the remaining issues.

¶4          At trial, the parties disputed the allocation of sale proceeds from a condominium purchased during the marriage. Husband's adult son lived in the condominium and paid the mortgage and upkeep until it was sold. The superior court concluded an enforceable oral agreement existed and that it was equitable to award the sale proceeds to Husband because his son assigned his interest in the property to Husband. The court declined

Wife's request for attorneys' fees but awarded Husband $40,000 in attorneys' fees.

¶5            Wife filed a timely notice of appeal.  We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).[1]

## DISCUSSION

### I.        Premarital Agreement

¶6            Wife contends the superior court erred in finding that the premarital agreement was valid because she did not enter it voluntarily and the agreement was unconscionable.  Arizona has adopted the Uniform Premarital Agreement Act ("UPAA"), which recognizes premarital agreements that are in writing and signed by both parties.  *See* A.R.S. § 25-202(A).  The party seeking to invalidate a premarital agreement bears the burden of proving either (1) the agreement was not entered voluntarily or (2) the agreement was unconscionable when executed and that person:

> (a) Was not provided a fair and reasonable disclosure of the property or financial obligations of the other party.

> (b) Did not voluntarily and expressly waive, in writing, any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided.

> (c) Did not have, or reasonably could not have had, an adequate knowledge of the property or financial obligations of the other party.

A.R.S. § 25-202(C).

¶7            Pursuant to the premarital agreement, the parties agreed to retain all property then owned or later acquired as separate property and abrogated community property except as to any salaries earned after marriage.  The agreement provided Wife with $3,000 per month in spousal maintenance for thirty-six months, if the parties were married for at least three years.  The agreement stated that attorney Philip Gerard represented Husband and no attorney was listed as representing Wife.  The agreement also stated that each party attached a schedule of his or her separate

---

[1]        We cite to the current version of all statutes because no revisions material to our analysis have occurred since the superior court's dissolution order.

property. However, the attached schedules for both parties were blank at the time they signed the agreement. Both parties acknowledged "full financial disclosure" by the other party and waived the right to additional disclosure beyond that already provided. The parties also agreed they were entering into the agreement "freely, voluntarily and with full knowledge."

**¶8** The superior court concluded Wife failed to establish that she signed the premarital agreement involuntarily or that the agreement was unconscionable. The court found the 2008 Agreement was also enforceable and that by signing that agreement, Wife confirmed the premarital agreement. Whether the premarital agreement is enforceable is a question of law we review *de novo*. *In re Marriage of Pownall*, 197 Ariz. 577, 580, ¶ 7 (App. 2000). We view the evidence in the light most favorable to upholding the superior court's decision and will not disturb the superior court's factual findings unless they are clearly erroneous. *Walsh v. Walsh*, 230 Ariz. 486, 490, ¶ 9 (App. 2012) (citation omitted).

### A. Voluntariness

**¶9** Wife argues the premarital agreement is invalid under A.R.S. § 25-202(C)(1) because she signed it under duress. To constitute duress, an act must be wrongful and preclude the exercise of free will and judgment. *USLife Title Co. of Ariz. v. Gutkin*, 152 Ariz. 349, 357 (App. 1986); Restatement (Second) of Contracts § 175 cmt. b (1981).

**¶10** Husband provided the proposed premarital agreement to Wife at least two months before the wedding. Wife testified that she refused to sign it and told Husband why she refused. She claimed Husband never brought up the premarital agreement again until he presented it to her only minutes before the wedding. Husband's testimony, however, was that, when first presented with the proposed agreement, Wife told him she would sign whatever he needed her to because she was not interested in his assets, but that she then came up with various reasons why she could not sign the agreement on the many times he asked her to between April and June 2003. Accordingly, Husband again presented the premarital agreement on the wedding day and asked his assistant to be present to notarize it.

**¶11** The parties' testimony as to Wife's voluntariness directly contradicted each other. On appeal, we do not reweigh conflicting evidence or redetermine the preponderance of the evidence. *In re Estate of Pouser*, 193 Ariz. 574, 579, ¶ 13 (1999). We defer to the superior court's findings if reasonable evidence supports them. *Kocher v. Dep't of Revenue*, 206 Ariz.

480, 482, ¶ 9 (App. 2003). The superior court found, that although Wife testified that she was angry with Husband and embarrassed, she presented no evidence to support she signed the agreement involuntarily. Further, Wife had the premarital agreement at least two months before the wedding when she could have consulted an attorney, which Husband encouraged her to do.

¶12 Based on the superior court's findings, we agree the social pressure Wife felt to either sign the agreement or postpone the wedding did not constitute wrongful conduct by Husband. Wife may have felt like she had no choice but to sign that day to avoid the embarrassment of postponing the wedding, but this did not deprive Wife of her free will and judgment. *See Pownall*, 197 Ariz. at 581, ¶ 13. This is particularly so where, as here, Wife had the opportunity for at least two months before the wedding to further review and propose revisions to the agreement and/or seek legal counsel concerning the advisability of signing the agreement, and chose not to.

¶13 Wife relies on fact-specific caselaw from other jurisdictions finding premarital agreements entered near the wedding date to be involuntary. We find these cases distinguishable. In two of these cases, the courts imposed heightened scrutiny to premarital agreements. In *Lutgert v. Lutgert*, 338 So. 2d 1111 (Fla. Dist. Ct. App. 1976), the Florida District Court of Appeals held that premarital agreements are subject to heightened scrutiny because of the confidential relationship between the parties. *Id.* at 1115. Additionally, the *Lutgert* court concluded that, when the agreement disproportionately favors one party, "a presumption of undue influence or overreaching" arises. *Id.* The husband, as the party receiving the disproportionate benefit under the agreement in *Lutgert*, bore the burden of rebutting this presumption. *Id.* at 1115-16. There is no similar presumption of undue influence under Arizona law. *See* A.R.S. § 25-202(C) (providing that the party challenging a premarital agreement bears the burden of proving its invalidity).

¶14 In assessing whether a wife entered into a premarital agreement voluntarily, the New Hampshire Supreme Court held that, under the heightened scrutiny applicable to premarital agreements, the timing of the agreement was paramount. *See In re Estate of Hollett*, 834 A.2d 348, 351-52 (N.H. 2003). The *Hollett* court found the wife, who was first presented with the agreement two days before the wedding and met with her attorney the day before the wedding, did not have an adequate "opportunity to seek independent advice and a reasonable time to reflect on the proposed terms." *Id.* at 350, 352 (quoting *Lutgert*, 338 So. 2d at 1116).

¶15        Wife also cites *In re Marriage of Rudder*, 217 P.3d 183 (Or. Ct. App. 2009), which held that parties to a premarital agreement are in a fiduciary relationship. *Id.* at 193. The *Rudder* court held "[t]he timing of the agreement in relation to the wedding" was relevant in determining voluntariness, among other factors. *Id.* at 194. Unlike the wives in *Rudder* and *Hollett*, however, Wife in this case was given two months to have the agreement reviewed by, and to obtain legal advice, from her own attorney and chose not to do so.

¶16        Unlike these jurisdictions, Arizona has not adopted a heightened scrutiny for premarital agreements. Although the relationship between spouses is confidential and fiduciary, *see Austin v. Austin*, 237 Ariz. 201, 206 n.4, ¶ 13 (App. 2015), Arizona applies the standard of unconscionability used in commercial and contract law, *Pownall*, 197 Ariz. at 580, ¶ 9; *see also* UPAA § 6, cmt (applying the same standard of unconscionability used in commercial law). Therefore, cases from other states applying heightened scrutiny are inapposite. When a premarital agreement is first presented and discussed is but one factor a court should consider in determining the voluntariness of the agreement.

¶17        In any event, under the facts as found here by the court, Wife received the premarital agreement two months before the wedding and had the opportunity to have her own attorney review the agreement and perhaps negotiate more favorable terms. However, Wife declined to do so. We do not doubt that the ultimate timing for signing may have been stressful for Wife, but that timing in large part, was due to Wife's own delay and, ultimately, her decision not to seek independent counsel. Viewing the evidence in the light most favorable to upholding the judgment, we affirm the court's finding that there was no duress and that Wife voluntarily entered the agreement.

### B.        *Unconscionability*

¶18        To invalidate the premarital agreement as unconscionable, Wife must prove the agreement was unconscionable *and* that she (1) was not provided a fair and reasonable disclosure of Husband's property or obligations, (2) did not waive in writing her right to such disclosure beyond the disclosure provided by Husband, and (3) did not have, or reasonably could not have had, adequate knowledge of the other party's property or obligations. *See* A.R.S. § 25-202(C)(2); *Schlaefer v. Fin. Mgmt. Serv., Inc.*, 196 Ariz. 336, 339, ¶ 9 (App. 2000). Based on the evidence presented, the superior court found that Wife had at least some actual disclosure and/or constructive knowledge of Husband's property provided during the two-

and-a-half years of their courtship, and waived in writing her right to additional full disclosure. We consider *de novo* whether the premarital agreement was unconscionable, but we defer to the superior court's factual findings. *Harrington v. Pulte Home Corp.*, 211 Ariz. 241, 252, ¶ 40 (App. 2005).

**¶19** The premarital agreement contained express written bilateral waivers of any right to disclosures "beyond that already provided." Wife specifically acknowledged in writing that Husband "has fully acquainted her with his means, resources, property and financial obligations, [and] that [Husband] has informed her regarding his estimated net worth[.]" The property schedules for the agreement were not completed when the parties signed the premarital agreement; rather, Husband testified that he disclosed his assets to Wife throughout the period they dated when he took her to the various properties he owned and told her the value of each. Husband did not provide Wife with tax returns or bank statements before the premarital agreement was signed.[2]

**¶20** Wife contends she did not receive full disclosure of Husband's property and she disputes having sufficient independent knowledge of Husband's assets and liabilities. Further, without a full disclosure by Husband, Wife asserts she could not validly waive her rights to the property. Wife also argues that a full and fair property disclosure is required despite her express waiver of such based on caselaw from other jurisdictions.

**¶21** Arizona requires full and fair disclosure of the parties' property and obligations. *See* A.R.S. § 25-202(C)(2)(a), (c). However, a party may waive his or her right to full financial disclosure pursuant to A.R.S. § 25-202(C)(2)(b), as both Wife and Husband did here. The waiver of a right to full financial disclosure was not present or addressed in any of the cases Wife cites on appeal.

**¶22** As the superior court correctly noted, Wife expressly waived in writing her rights to any disclosure beyond that Husband had already provided. If Wife was unsatisfied with Husband's verbal, informal disclosure, she was obligated to raise that objection or request additional information prior to signing a premarital agreement that contained these explicit, bilateral waivers. Instead, Wife signed a document agreeing

---

[2] Absent the express waiver of further disclosure, as more fully discussed below, Husband's partial, verbal disclosures are inadequate, and do not satisfy the requirements of A.R.S § 25-202(C)(2)(a).

Husband's disclosure was adequate and expressly waived any right to further disclosure.

¶23          Arizona law required Wife to prove that she *did not* waive in writing any right to disclosure of Husband's property *beyond the disclosure already provided.* A.R.S. § 25-202(C)(2)(b). Wife cannot do so because, as already noted, she signed the premarital agreement expressly waiving her right to any disclosure beyond that already provided by Husband.[3] Accordingly, the premarital agreement is valid and enforceable.

### C.     *The 2008 Agreement*

¶24          During the marriage, the parties wanted to purchase a new residence. Husband was advised that the residence needed to be titled to only one spouse to avoid comingling issues. The 2008 Agreement, signed on March 5, 2008, acknowledged the parties were joint owners of two LLCs. The agreement stated the parties intended to purchase a house, and Wife would sell her interest in the two LLCs to Husband as his separate property in exchange for a $700,000 payment from Husband. Wife would then purchase the house, and Husband would transfer his interest in the new house to Wife, which she would then own as her separate property.

¶25          The 2008 Agreement contained the following language:

> WHEREAS, in anticipation of marriage, [Husband] and [Wife] entered into that certain PRENUPTIAL AGREEMENT dated as of June 21, 2003, wherein [Husband] and [Wife] each agreed to, recognized and acknowledged the existence and the continuing existence of the other's sole and separate ownership and interest in and to real and personal property owned prior to said marriage, as more further described therein[.]

The superior court found the 2008 Agreement was a valid postnuptial agreement, and Husband met his burden of proving by clear and convincing evidence that it was not fraudulent, coerced, unfair, or inequitable. The court below noted Wife took an unusual legal position, which she revealed for the first time at the end of a two-day evidentiary

---

3          Having concluded that Wife failed to establish one of the three requisite disclosure elements, we need not reach Wife's argument that the premarital agreement was also substantively and procedurally unconscionable.

hearing, in that she wanted the house affirmed as her separate property, and thus had decided not to contest the validity of the 2008 Agreement.

**¶26**		On appeal, Wife challenges only the superior court's conclusion that the 2008 Agreement affirmed the 2003 premarital agreement. However, as discussed above, the premarital agreement was valid. Therefore, we need not determine whether the 2008 Agreement affirmed the premarital agreement.[4]

### II.		*Condominium Sale Proceeds*

**¶27**		In 2004, Husband purchased a condominium for his adult son's use. Husband and his son testified that Husband made a down payment of $46,000 to purchase the condominium because son did not have sufficient credit to purchase it himself. Husband and his adult son had an oral agreement that Husband would make the down payment, his son would make all remaining payments and be responsible for maintenance, repair and other related expenses, and upon satisfaction of the mortgage, the condominium would be retitled in his son's name. Wife testified that she and Husband purchased the condominium as an investment and to help his son with affordable housing.

**¶28**		Before closing on the sale, Wife signed a deed disclaiming any interest in the condominium. Then, a few days after closing, Husband signed a warranty deed conveying the property to the community with a right of survivorship. The condominium sold in 2015, and Husband received half of the total sales proceeds. Only the remaining half, $38,825, was at issue before the superior court. Wife claims she was entitled to this

---

[4]		Wife also argues that because the court concluded that the 2008 Agreement affirmed the premarital agreement, Husband was required to prove the validity of the premarital agreement by the higher clear and convincing evidence standard applicable to postnuptial agreements. *See Austin*, 237 Ariz. at 206, ¶ 13 (recognizing a spouse seeking to uphold a postnuptial agreement bears the burden of proving by clear and convincing evidence that it was not fraudulent, coerced, unfair, or inequitable) (citation omitted). Wife raises this argument for the first time on appeal; therefore, we deem it waived. *See Airfreight Express Ltd. v. Evergreen Air Ctr., Inc.*, 215 Ariz. 103, 109-10, ¶ 17 (App. 2007). Moreover, there is no authority for Wife's contention. The court applied the correct standard in determining the postnuptial 2008 Agreement was valid, even though Wife did not contest it.

half of the proceeds because the condominium, and therefore its proceeds, was community property.

¶29 The superior court concluded Husband, Wife, and Husband's son had an oral agreement that Husband would supply the down payment, his son would make all remaining payments and, upon satisfaction of the mortgage, his son would own the condominium. The court rejected Wife's claim that this violated the Statute of Frauds, finding the son's part performance took the agreement outside the Statue of Frauds. The court also found this to be one of the rare cases where an equal allocation of the community sale proceeds would not be equitable, and the court awarded the remaining proceeds to Husband.

¶30 Wife contends the superior court erred in applying the part performance exception to the Statute of Frauds because the son was not a party to the litigation. The Statute of Frauds bars an action on an unwritten agreement for the sale of real property or an interest therein. *See* A.R.S. § 44-101(6). Arizona recognizes a part performance exception to the Statute of Frauds, under which, "a party may be precluded from asserting the Statute of Frauds as a defense when he has induced or permitted another to change his position to his detriment in reliance on an oral agreement which would be within the Statute." *William Henry Brophy Coll. v. Tovar*, 127 Ariz. 191, 194 (App. 1980) (citations omitted). The part performance exception applies only if the acts "cannot be explained in the absence of the contract." *Owens v. M.E. Schepp Ltd. P'ship*, 218 Ariz. 222, 226, ¶ 16 (2008); *see also* *William Henry Brophy Coll.*, 127 Ariz. at 194-95.

¶31 Wife does not argue the son's part performance is inadequate; rather, she contends the court cannot rely on the part performance of a non-party to find an enforceable contract.[5] We need not decide whether there was an enforceable "contract" to transfer ownership of the condominium to the son or whether the part performance exception applied. Instead, we affirm the award as an equitable property allocation under the

---

[5] In her reply brief, Wife also argues, for the first time, that the trial court should not have relied on Husband and son's testimony alone to establish son's part performance. "Arguments raised for the first time in a reply brief are deemed waived." *Pownall*, 197 Ariz. at 583 n.5, ¶ 25. Moreover, Wife's argument goes to the weight the court gave the evidence. We do not reweigh evidence on appeal. *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009).

circumstances.  *See Kocher*, 206 Ariz. at 482, ¶ 10 (holding appellate court may affirm the trial court judgment if it is correct for any reason).

**¶32**        Here, the November 2004 warranty deed transferred title in the condominium to Husband and Wife as community property.  A gift is presumed when one spouse places his separate property in joint tenancy with the other spouse.  *See Valladee v. Valladee*, 149 Ariz. 304, 307 (App. 1986).  Thus, the condominium was presumed to be community property, as were the sale proceeds, which the court was required to allocate equitably.  *See* A.R.S. § 25-318(A); *see also Valladee*, 149 Ariz. at 307-08 (recognizing that, under *Baum v. Baum*, 120 Ariz. 140 (App. 1978), and other Arizona cases, a court may not reimburse a spouse for voluntary contributions of separate funds for a community obligation, absent an agreement to do so).

**¶33**        In most cases, equal allocation of community property is equitable.  *Toth v. Toth*, 190 Ariz. 218, 221 (1997).  In this case, however, as in *Toth*, "equal is not equitable."  *Id.*  The sales proceeds were not the result of any community effort.  *See id.* at 221-22.  In fact, the equity in the condominium was, in large part, a result of the son making mortgage payments for eleven years, plus a $40,000 to $50,000 lump sum principal payment, and other home improvements paid for by either Husband from his separate property or by the son.  As with the wife in *Toth*, Wife made no contribution to the condominium.  Courts may consider the source of funds in determining what is equitable.  *Id.* at 222.  The superior court could not award the sale proceeds to the son after he withdrew his motion to intervene.  However, the son assigned his interests to Husband.  Therefore, it was equitable to award the remaining proceeds to Husband, as the son's assignee.  Accordingly, we find no abuse of discretion and affirm the allocation of the sale proceeds to Husband.

### III.    *Award of Attorneys' Fees to Husband*

**¶34**        The superior court ordered Wife to pay $40,000 toward Husband's attorneys' fees incurred during the litigation of the premarital agreement.  The court denied Wife's request for an award of fees, finding Husband did not take unreasonable positions and the financial disparity between the parties "was not so great as to merit an award of fees and costs[.]"  Wife contends the court erred in basing the fee award on the prevailing party clause in the premarital agreement.  Husband argues the court based the award on A.R.S. § 25-324(A), not the prevailing party clause, and given Wife's unreasonable positions, the award was appropriate.

¶35 Generally, we review an award of attorneys' fees for an abuse of discretion. *See Pownall*, 197 Ariz. at 583, ¶ 26. However, whether the superior court relied on an incorrect legal standard is a question of law, which we review *de novo*. *See id.* at 580, ¶ 7.

¶36 At close of trial, the court discussed its approach to the attorneys' fees issue. After noting the prevailing party clause warranted an award of fees to Husband who prevailed in upholding the premarital agreement, the court also stated that it had a "duty to view attorney's fees as a whole as it would in any case[]" under the § 25-324(A) standard. In the decree, the court again referred to the prevailing party clause but then set forth detailed findings supporting its finding that Wife took unreasonable positions in litigating the validity of the premarital agreement. The court cited § 25-324 and specifically referred to Wife's unreasonableness and Husband's reasonableness.

¶37 In its final order, the court acknowledged the applicable case law, including *Bobrow v. Bobrow*, 241 Ariz. 592, 599, ¶ 31 (App. 2017), which holds that the court's consideration and application of § 25-324 controls over a prevailing party clause. The court expressly noted its ability under the statute to award Wife, the non-prevailing party, her attorneys' fees, but expressly declined to do so. It also explicitly found that Wife's behavior and positions taken in the litigation were unreasonable.[6] The court also found that, although Husband had greater financial resources, Wife had received significant financial resources as a result of the dissolution. Although the final order referenced Husband as the prevailing party as a basis for the award of fees, we may affirm the superior court's ruling on other grounds supported by the record. *See* ARCAP 13(b). The express findings of the court concerning Wife's unreasonable positions and the sufficiency of her financial resources more than adequately support an

---

[6] The record shows that, after the court ruled the premarital agreement was valid, the parties incurred substantial attorneys' fees litigating the $38,825 in condominium proceeds and Wife's share of a $50,000 tax refund. Wife litigated the validity of the premarital agreement and declined a settlement offer after the court expressed doubts regarding the validity of the premarital agreement. Wife also declined other pretrial settlement offers that were more favorable than the final result, and instead caused the parties to incur attorneys' fees well in excess of the amount in controversy.

award of fees to Husband pursuant to § 25-324, and on that basis, we affirm that award.

### IV. Trial Time Limitations

**¶38** Wife contends the court violated her due process rights by failing to provide adequate time to present her case challenging the validity of the premarital agreement. The court has broad discretion to impose time limitations on trial proceedings. *See* Ariz. R. Fam. Law P. 77(B)(1); *Volk v. Brame*, 235 Ariz. 462, 468, ¶ 20 (App. 2014). Any such limitations must be reasonable under the circumstances. *Volk*, 235 Ariz. at 468, ¶ 20. "The determination of when additional time is necessary is normally committed to the discretion of the trial court." *Id.* at 469, ¶ 22. We review such a determination for an abuse of discretion. *Gamboa v. Metzler*, 223 Ariz. 399, 402, ¶ 13 (App. 2010).

**¶39** Wife requested an additional 90 to 120 minutes for the evidentiary hearing on the validity of the premarital agreement. The superior court granted an additional three hours, thus, awarding Wife the additional ninety minutes (her half of the three hours) she requested. Nonetheless, Wife contends she needed more time to meet her burden of proving the premarital agreement was invalid. Wife's offer of proof stated she would have presented evidence of Husband's business acumen, education, and experience, his "bad memory," the inadequate financial disclosure, how the premarital agreement was drafted, and the circumstances under which she received it.

**¶40** Most of this evidence related to the unconscionability and disclosure elements. As noted above, the superior court properly upheld the premarital agreement based on Wife's waiver of any additional financial disclosure beyond that already provided by Husband. This evidence does not impact that finding; accordingly, Wife was not prejudiced by the court's denial of additional time.

**¶41** As to the voluntariness of the premarital agreement, it was undisputed that Husband had the premarital agreement prepared, and Wife testified extensively to the circumstances of the premarital agreement. Wife did not specify what *additional* evidence she would have presented. Thus, Wife failed to demonstrate prejudice resulting from the trial time allotted by the court. *See Volk*, 235 Ariz. at 470, ¶ 26 ("Due process errors require reversal only if a party is thereby prejudiced."). Accordingly, we find no reversible error and affirm the decree.

*V.*      *Attorneys' Fees and Costs on Appeal*

**¶42**      Both parties request an award of attorneys' fees and costs on appeal pursuant to § 25-324. We award Husband his costs on appeal, subject to compliance with Arizona Rule of Civil Appellate Procedure 21, but, in the exercise of our discretion and review of the parties' 2016 affidavits of financial information, we order Husband to pay a reasonable amount of Wife's attorneys' fees on appeal upon Wife's compliance with ARCAP 21.

**CONCLUSION**

**¶43**      We affirm the superior court's orders upholding the premarital agreement and the final decree, as well as to the award of attorneys' fees to Husband, and award Husband his costs on appeal. Pursuant to § 25-324, we award Wife her reasonable attorneys' fees on appeal subject to compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:  AA