DRABEK, by Guardian *ad litem*, Appellant, v. SABLEY, Respondent.

*May 9—June 7, 1966.*

For the appellant there was a brief by *Godfrey, Godfrey, Neshek & Conway* of Elkhorn, and oral argument by *Dennis D. Conway*.

For the respondent there was a brief by *Morrissy, Morrissy, Sweet & Stowe* of Elkhorn, and oral argument by *Ralph R. Stowe*.

FAIRCHILD, J. Interpreting the evidence, where in conflict, most favorably to the verdict, defendant effectively restrained Tom's physical liberty, and took him into the village for the purpose of having him tell the police officer the names of the other boys. Defendant held Tom by the arm both on the way to the car before driving into the village, and, at times, while they were in the village.

Thus there was false imprisonment unless the restraint was legally justified.[1] Except for possible justification, the offensive holding of the arm was also a battery, albeit nominal.

Defendant does not assert that he had lawful authority, under sec. 48.28, Stats., part of the Children's Code, to take Tom "into immediate custody" on account of any alleged felony nor to arrest him for an offense under general principles applicable to arrest by one who is not an officer. Thus we need not attempt to define justification in those areas.

Defendant claims justification in that he witnessed acts that were dangerous to defendant and others and took reasonable steps to prevent further dangerous activities.

---

[1] *Weiler v. Herzfeld-Phillipson Co.* (1926), 189 Wis. 554, 557, 208 N. W. 599; *Lane v. Collins* (1965), 29 Wis. (2d) 66, 69, 138 N. W. (2d) 264. See 22 Am. Jur., False Imprisonment, p. 422, sec. 107.

It is recognized that one may be privileged to interfere with the liberty of another, within limits, for the purpose of defending one's self, defending a third person, or preventing the commission of a crime.[2] Dr. Sabley did not act in self-defense, since he was no longer in danger. It is true that the boys momentarily terminated their offensive activity when he stopped his car, but it was reasonable to expect them to renew it. We perceive that throwing snowballs at moving cars creates danger, as much because of the likelihood of startling the driver as of damage to the cars. Although it is a close question whether the threat to the safety of others was sufficiently immediate, after the boys had run away, it seems to us that Dr. Sabley, though not an officer, was privileged to take reasonable steps to prevent the resumption of the activity.

We conclude that Dr. Sabley's actions presented a jury question of reasonableness up to the time he put the boy in his car and drove away. Up to that time he had obtained the boy's name, and admonished him, according to the defendant's testimony, against carrying on the activity. The jury was entitled to believe that in holding the boy he used only such force as was reasonable for the purpose. Dr. Sabley may well have been justified in marching Tom across the road to his home and notifying his parents. We conclude, however, that it was unreasonable, as a matter of law, for Dr. Sabley to put ten-year-old Tom in his car a few yards from his home and drive him into the village for the purposes he did and under the circumstances of this case.

We note that where a child is taken into immediate custody under the Children's Code, his parents "shall be notified as soon as possible" and that "The person taking the child into custody shall, unless it is impracticable, undesirable, or has been otherwise ordered by the court,

---

[2] 1 Harper and James, Law of Torts, p. 237, sec. 3.11; p. 245, sec. 3.12; and p. 286, sec. 3.19.

return the child to his parent, guardian or legal custodian on the promise of such person to bring the child to the court . . . ." [3]

Accordingly we conclude that the jury finding, in effect, that Dr. Sabley's conduct was reasonable exonerates him up to the time he put Tom in the car, but not afterward. The restraint of Tom's liberty continued, and after that point there was false imprisonment. Dr. Sabley admitted holding Tom while they looked for the officer, and this was a battery, though nominal.

It follows that there must be a determination of compensatory damages, though the record will not support a very substantial award, for the period of false imprisonment after the point just mentioned, and for the battery, consisting of the holding of the arm for a time after reaching the village. We think the first jury's findings that there was no false imprisonment and no assault and battery, imply a finding that there was no malice, and hence no punitory damages are recoverable. The only issue on the new trial will be compensatory damages.

*By the Court.*—Judgment reversed, cause remanded for further proceedings.

BEILFUSS, J. (*dissenting*). I respectfully dissent from the majority opinion.

As we have stated countless times:

"When a jury verdict is attacked we inquire only whether there is any credible evidence that, under any reasonable view, supports the verdict. This is especially so when the verdict has the trial court's approval. *Olson v. Milwaukee Automobile Ins. Co.* (1954), 266 Wis. 106, 62 N. W. (2d) 549, 63 N. W. (2d) 740; *Hibner v. Lindauer* (1963), 18 Wis. (2d) 451, 118 N. W. (2d) 873." *Cheetham v. Piggly Wiggly Madison Co.* (1964), 24 Wis. (2d) 286, 290, 128 N. W. (2d) 400.

[3] Sec. 48.29 (1), Stats.

The majority concedes that the jury could find that Dr. Sabley's actions were reasonable up to the time he put the boy in his car and drove away. The forcible restraint of the boy had been accomplished by that time. I believe the jury had the same right to determine the reasonableness of Dr. Sabley's conduct toward the boy for the next fifteen to twenty minutes. The entire conduct of both boy and Dr. Sabley was before the jury; they found it was reasonable.

Although I would have no hesitancy in approving a jury verdict finding that Dr. Sabley's conduct was unreasonable, I believe it was a jury question and that this court should not substitute its judgment for that of the jury on this question.

I would affirm the judgment.

I am authorized to state that Mr. Chief Justice CURRIE joins in this dissent.