493 P.2d 935

**John H MAFFEO, individually and dba Maffeo and Son, et al., Appellants,**

**v.**

**William W. WOOD and Emma Wood, his wife, Appellees.**

**No. I CA–CIV 1672.**

Court of Appeals of Arizona, Division 1.

Feb. 7, 1972.

Rehearing Denied March 8, 1972.

Review Denied April 18, 1972.

Browder, Gillenwater & Daughton by Robert W. Browder, Phoenix, for appellants.

Cox & Cox by George S. Livermore, Jr., Phoenix, for appellees.

KRUCKER, Chief Judge.

Appellees, plaintiffs below, brought an action against Mr. and Mrs. Maffeo and their minor son to recover damages for injuries sustained by the plaintiff-husband and allegedly caused by the minor's negligence in operating an automobile owned by his parents. The case was tried to a jury which returned a $10,000 verdict in favor of the plaintiffs and judgment was duly entered thereon. Defendants' motion for judgment n. o. v. or, in the alternative, a new trial, was subsequently denied and this appeal followed.

Defendants initially contend that they were entitled to a directed verdict or, if we agree that submission to the jury was appropriate, reversal is required because of error in instructing the jury. They also contend that the $10,000 award was so excessive that it must have resulted from passion and prejudice.

The plaintiffs' complaint alleged in pertinent part that the plaintiff-husband was a maintenance man employed by St. Francis Xavier Church and his duties included regulating the motor vehicle traffic through the school grounds; that on or about September 15, 1966, pursuant to his duties as a maintenance man, he observed the minor defendant negligently drive a specified vehicle through the school grounds at a speed of approximately 50 miles per hour; that while he was lawfully inquiring into said defendant's purpose in being on these premises, the defendant did negligently

drive and operate the vehicle so as to strike him and thereby cause him to sustain certain injuries; and that as a result of said injuries both plaintiffs were damaged. The complaint also alleged liability of the minor's parents on the basis of the family-purpose doctrine.

The position of the defense was that the minor was unlawfully arrested by Mr. Wood and that his actions in resisting or avoiding the unlawful arrest were privileged in that his conduct was reasonably necessary to resist or avoid the unlawful arrest and that he did not intentionally cause bodily harm to Mr. Wood.

Briefly, the facts are as follows. Mr. Wood had been employed by St. Francis Xavier school and church for many years as a maintenance man. The principal of Xavier High School testified that Mr. Wood's duties included anything that would affect the school and that she had asked him to do what he could about vehicles speeding on the school grounds. On the morning of the incident in question, Mr. Wood was parked on the church property and was in the process of letting his grandchild out of the car when he saw the minor drive by him in an easterly direction. He thought he was going too fast and proceeded to follow him on the private road that eventually intersected with Seventh Street, Phoenix, Arizona. The Maffeo car stopped behind the cars which were stopped for the traffic light at Seventh Street and Wood parked behind the Maffeo vehicle, got out of his car and approached the driver's side of the Maffeo car. He asked the boy for his name and driver's license, but the boy refused to comply with the request. Mr. Wood instructed a passer-by who had volunteered assistance to go over to the school and ask the registrar to call the police. The boy was aware of the fact that Mr. Wood had requested the police be summoned. The minor told Wood, "I don't have time to play cops and robbers with you," and closed the window of his car and locked the door. Wood never touched the boy

and according to the boy he never felt that Wood was confining him or preventing him from leaving. Mr. Wood moved around to the front of the Maffeo vehicle and when asked why, he responded:

"For two reasons. He had been moving ahead each time that I talked to him on the side. From the point even after I called for the police, he moved up again whenever it was an opportunity for him. And it was my intention to get the license number, and slow him up if I could from pulling out onto Seventh Street before the police would get there." The boy admitted that he saw him in front of the car.

The Maffeo boy, who was then age 16, admitted that for a period of approximately ten years he had been on the Xavier grounds every day during the school year. During that period of time he had come to know Mr. Wood as an employee of the school. Therefore there was no question in his mind as to Mr. Wood's identity. He admitted that Mr. Wood never touched him and never put his hands inside the vehicle during the conversation concerning his name and license number. He fully understood that Mr. Wood had asked that the police be called and he locked the car door because he thought Mr. Wood might try to stop him.

After closing the window and locking the door, while Wood was in front of the car, the boy shifted the automatic transmission from "park" to "drive" and the vehicle lurched forward. The boy drove off and Mr. Wood was knocked up in the air, spun around and landed in the roadway on his hands and knees. His eyeglasses and shoes were knocked off.

Mr. Wood was hospitalized for three days after the accident and complained of pain in his left side, severe headaches, chest pains and minor aches in his foot and knee. He missed approximately two weeks from work and after returning to work had memory difficulties. He sustained a brain concussion which caused a

permanent memory impairment and triggered headaches. (Prior to the accident, his memory was good and he had enjoyed freedom from headaches.)

Wood's relationship with his wife also suffered after the accident—he no longer helped her with the housework or yard work and ceased taking her on hunting and fishing trips which they had previously enjoyed doing. He also was unable to have sexual intercourse with her which adversely affected the marital relationship.

The defendants claim error in the court's refusal to give their Requested Instruction No. 2[1] and giving defendants' Requested Instruction No. 2A, as modified.[2] The court declined to give Instruction No. 2 for the reason that it refused to rule as a matter of law that there had been an arrest.

It cannot be gainsaid that school authorities may establish rules and regulations governing the conduct of pupils on the school premises. The record reflects that driving on the school premises here was limited to speeds of 5 to 15 miles an hour. It also reflects that it was customary for the school authorities to handle infractions of the rules themselves and mete out appropriate discipline depending upon the nature of the offense. Certain high schools also had a mutual agreement to report infractions of rules by their respective students so that each school could deal with its own students as to disciplinary measures. In this age of mobility, we believe it not inappropriate for school authorities to police and control the operation of motor vehicles on and around the school premises. The health, welfare and safety of the school population justifies implementation and enforcement of rules regulating vehicular traffic. We conceive that when Mr. Wood saw the Maffeo boy driving at an excessive rate of speed, he was privileged to take reasonable steps to prevent the continuance of such dangerous activity. Cf., Drabek v. Sabley, 31 Wis.2d 184, 142 N.W.2d 798 (1966). Our Supreme Court, in the case of Holmes v. Nester, 81 Ariz. 372, 306 P.2d 290 (1957), has recognized this principle:

"While it is generally stated that one who without legal authority arrests and detains another is not protected because detention was done in a good faith belief that he had such authority, there is a class of cases wherein reasonable grounds to believe the law has been violated is recognized as justification for arrest and detention. This rule has been applied to school authorities and owners of property when they have reason to believe detention is necessary for its protection. [Citations omitted]" 81 Ariz. at 376, 306 P.2d at 293.

The court did point out the lack of harmony as to whether the reasonableness of such conduct is a court or jury question

---

1. Defendants' Requested Instruction No. 2:

"You are instructed that the words and actions of plaintiff William Wood amounted in law to an unlawful arrest of defendant John Reed Maffeo. In such case John Reed Maffeo had the right to resist or avoid the unlawful arrest by use of whatever force or means might be reasonably necessary to accomplish such purpose under the circumstances short of intentionally inflicting serious bodily harm on William Wood."

2. Defendants' Requested Instruction No. 2A:

"Any restraint or detention, however slight, upon another's liberty to come and go as one pleases constitutes an arrest. An arrest can be made by words or actions, or both, and actual force or physical restraint is not necessary to constitute an arrest.

"If you find from the evidence that William Wood arrested John Reed Maffeo, then I instruct you that such an arrest was unlawful. In such case, John Reed Maffeo had the right to resist or avoid the unlawful arrest by use of whatever force or means might be reasonably necessary to accomplish such purpose under the circumstances short of *intentionally inflicting* serious bodily harm *on* William Wood." [The court modified the instruction by substituting "conduct likely to cause" and "to" for the italicized words.]

and chose to follow the line of authority which holds that if there is a basis for reasonable men to disagree, it should be submitted to the jury.

 We believe, and so hold, that Mr. Wood's conduct under the circumstances was reasonable as a matter of law and therefore submission of the issue to the jury was inappropriate. The defendants, however, cannot complain of an error which is favorable to them. Nichols v. Baker, 101 Ariz. 151, 416 P.2d 584 (1966).

 Defendants challenge the size of the verdict. They admit that there is sufficient evidence from which a jury could find that Mr. Wood sustained an injury and a memory loss as a result of the accident and concede that they cannot refute the testimony concerning his headaches. They contend that their principal quarrel with the verdict can "only be accounted for by the jury having accepted the bizarre and unfounded testimony of Dr. O'Conner that Wood was impotent and that the impotency was caused by the accident." The expertise of Dr. O'Conner, the Woods' family doctor who had treated Mr. Wood for approximately 16 years, was not challenged at the time of trial. Defense counsel was afforded and did in fact utilize the opportunity to cross examine him at length. No medical testimony was presented to refute the doctor's opinion that the accident in question contributed to Mr. Wood's impotency. In the absence of an inescapable legal conclusion to the contrary, it was proper for the jury to accept Dr. O'Conner's opinion as to causation. Hurler v. Industrial Commission, 13 Ariz. App. 66, 474 P.2d 73 (1970). Our conscience is not shocked by the size of the verdict and we therefore reject the claim of excessiveness.

Judgment affirmed.

HATHAWAY and HOWARD, JJ., concur.

Note: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.