NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

OFELIA LEDEZMA KEELAN, *Petitioner/Appellant/Cross-Appellee,*

*v.*

GARY PATRICK KEELAN, *Respondent/Appellee/Cross-Appellant.*

No. 1 CA-CV 22-0280 FC

FILED 6-20-2023

Appeal from the Superior Court in Maricopa County
No. FN2021-090505
The Honorable Keith A. Miller, Judge

**AFFIRMED**

COUNSEL

Stanley David Murray, Attorney at Law, Scottsdale
By Stanley D. Murray
*Counsel for Petitioner/Appellant/Cross-Appellee*

Scottsdale Family Law, PLLC, Scottsdale
By Taylor S. House
*Counsel for Respondent/Appellee/Cross-Appellant*

---

**MEMORANDUM DECISION**

Judge Daniel J. Kiley delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge James B. Morse Jr. joined.

---

**K I L E Y**, Judge:

¶1          After a trial, the superior court issued a decree (the "Decree") dissolving the marriage of Ofelia Ledezma Keelan ("Wife") and Gary Patrick Keelan ("Husband"). Wife appeals from provisions of the Decree dividing the parties' assets. Husband cross-appeals, alleging that the court erred in denying his request for reimbursement for monthly mortgage payments he made before the marriage and after the marital community terminated. He also asserts that the court erred in denying his request for an award of attorney fees under A.R.S. § 25-324.

¶2          For the following reasons, we reject both parties' arguments and affirm the superior court's rulings in all respects.

**FACTS AND PROCEDURAL HISTORY[1]**

¶3          The parties were married in March 2018. Three months earlier, in December 2017, they purchased a residence in Gilbert, Arizona (the "Palomino residence"), taking title as joint tenants with right of survivorship. Wife contributed $85,000 of her separate funds toward the $100,000 down payment, while Husband contributed the remaining $15,000. The parties agreed that, due to Husband's higher credit score, Husband alone would sign the promissory note and become the sole obligor for the mortgage payments. In exchange, Wife agreed to be responsible for other household expenses.

¶4          After the parties' marriage, they did not re-deed the Palomino residence to themselves as community property, continuing instead to hold it as joint tenants with right of survivorship.

¶5          Prior to the marriage, Wife had a Bank of America account (the "3746 account") into which she deposited separate funds, including her earnings from employment and the proceeds from the sale of her previous

---

[1] We view the evidence in the light most favorable to upholding the superior court's rulings. *Kohler v. Kohler*, 211 Ariz. 106, 107, ¶ 2 (App. 2005).

residence. After they married, the parties began depositing community funds into the 3746 account and using funds in the account for community purposes. In 2020, Wife added Husband's name to the 3746 account. The parties also kept cash derived from their earnings during the marriage in a safe in the Palomino residence, using the cash for community purposes. They did not keep a ledger of cash deposited into and withdrawn from the safe.

**¶6**        During the marriage, Wife contributed $10,000 toward Husband's purchase of a 2015 Lincoln MKZ. Wife also made a $16,000 down payment to purchase a 2019 Toyota Tacoma for her own use.

**¶7**        The marital community terminated when Wife served the petition for dissolution in February 2021. Both parties continued to reside in the Palomino residence throughout the dissolution trial in January 2022.

**¶8**        At trial, each party asked to be awarded the Palomino residence. Husband agreed to pay Wife one-half of the equity in the residence, while Wife argued that the equity should be divided in proportion to each party's contribution toward the $100,000 down payment. The parties also requested additional offsets for mortgage payments, maintenance, and repairs for the Palomino residence to the extent those expenses were paid with funds constituting separate property. Both parties agreed that Husband should be awarded the Lincoln MKZ and Wife the Toyota Tacoma, and both asked that the court order an equalization payment to account for the difference in the value of the two vehicles. Husband presented evidence that the Lincoln MKZ was valued at $11,578 and the 2019 Toyota Tacoma was valued at $37,996; Wife presented no evidence of the value of either vehicle.

**¶9**        In March 2022, the superior court issued the Decree in which the court, *inter alia*, (1) ordered the sale of the Palomino residence, with the net proceeds to be shared equally between Husband and Wife; (2) awarded Husband and Wife the Lincoln MKZ and the Toyota Tacoma, respectively; (3) awarded Husband all of the cash, in the amount of $5,000, that remained in the safe in the Palomino residence; (4) allocated various accounts with a combined value of $47,661.62 to Wife and accounts with a combined value of $9,727.45 to Husband; (5) ordered Wife to pay Husband an equalization payment of $29,200; and (6) denied each party's request for an award of attorney fees and costs. In denying each party's request for attorney fees and costs, the court found no substantial disparity in the parties' financial resources and that neither Husband nor Wife acted unreasonably in the litigation.

**¶10** Wife timely appealed. Husband cross-appealed from the denial of his request for reimbursement for mortgage payments for the Palomino residence and his request for an award of attorney fees and costs.

**¶11** In February 2022, after the trial concluded but before the court issued the Decree, Husband severed the joint tenancy of the Palomino residence by recording an affidavit terminating right of survivorship under A.R.S. § 33-431(E), changing the parties' shared ownership of the residence to that of tenants in common.[2] When Wife learned of the affidavit in August 2022, she filed a motion for relief from the Decree under Arizona Rule of Family Law Procedure ("Rule") 85(b), arguing that "the Decree was based on this Court's finding that the parties owned the property as joint tenants with right of survivorship but newly discovered evidence shows that the property was converted to a tenancy in common prior to the entry of the Decree." The superior court denied Wife's motion and awarded Husband attorney fees and costs.

**¶12** Wife then supplemented her notice of appeal to challenge both the denial of her Rule 85(b) motion and the award of fees to Husband. We have jurisdiction under A.R.S. § 12-2101(A)(1).

**DISCUSSION**

**I.** **The Palomino Residence**

*a. Equal Net Proceeds Ordered by the Decree*

**¶13** We review the superior court's classification of property as separate or community property *de novo* but review the court's distribution of property for an abuse of discretion. *Bell-Kilbourn v. Bell-Kilbourn*, 216 Ariz. 521, 523, ¶ 4 (App. 2007). We will find no abuse of discretion if the evidence reasonably supports the court's decision. *Kohler*, 211 Ariz. at 107, ¶ 2.

**¶14** Wife argues that the superior court erred when it awarded the parties equal shares of the proceeds of the sale of the Palomino residence.

---

[2] Husband later explained that he recorded the affidavit to sever the joint tenancy because he was undergoing potentially risky medical treatment and wanted his interest in the Palomino residence left to other family members instead of Wife if he did not survive. *See In re Estate of Estelle*, 122 Ariz. 109, 111 (1979) ("[T]he right of survivorship by which the [surviving joint tenant] takes the estate free of any claim of a deceased joint tenant" is "[t]he distinguishing feature of a joint tenancy.").

She argues, first, that the court lacked subject matter jurisdiction to enter any orders with regard to the residence because it was held in joint tenancy. Because property held in joint tenancy is the sole and separate property of each joint tenant, she asserts, the court "should have affirmed the [Palomino] residence as [the parties'] sole and separate property" to be partitioned pursuant to A.R.S. § 12-1218(C).

¶15 Property held in joint tenancy is the separate property of each joint tenant. *Toth v. Toth*, 190 Ariz. 218, 220 (1997). Because "[p]roperty takes its character as separate or community at the time it is acquired," *Honnas v. Honnas*, 133 Ariz. 39, 40 (1982), the parties continued to hold their equal interests in the Palomino residence as separate property after they married. *See State v. Superior Court*, 188 Ariz. 372, 373 (App. 1997) ("Married joint tenants . . . each hold[] his or her ownership interest as separate property."). Although married joint tenants hold their respective interests as separate property, the court in a dissolution action is statutorily authorized to divide spouses' joint tenancy property. A.R.S. § 25-318(A); *see also Toth*, 190 Ariz. at 220 ("[U]nder [A.R.S. § 25-318(A)], joint tenancy property and community property are to be treated alike . . . for dissolution purposes.").

¶16 In support of her contention that the court "did not have authority over the parties' sole and separate jointly held residence," Wife cites *McCready v. McCready*, 168 Ariz. 1 (App. 1991) for the proposition that joint tenancy property can be divided only in a partition action, not a dissolution case. *McCready*, however, is inapposite. In *McCready*, ex-spouses purchased a residence as joint tenants almost two years after the dissolution of their marriage. *Id.* at 1-2. Over ten years later, the ex-husband filed a post-decree petition in the dissolution case seeking an order for the sale of the residence. *Id.* at 2. After the superior court ruled that the ex-wife could purchase the ex-husband's interest in the residence, this Court reversed, holding that "the trial court lacked jurisdiction to render the particular order entered." *Id.* at 2-3. Absent agreement of the joint tenants, the *McCready* court stated, "the only lawful means for disposing of the subject property" was by partition action under A.R.S. §§ 12-1211 *et seq. Id.* at 3. Because the joint tenancy property at issue in *McCready* was not purchased until after the parties' marriage ended, nothing in *McCready* supports Wife's position that the court in a dissolution action lacks jurisdiction over joint tenancy property owned by the spouses.

¶17 Because A.R.S. § 25-318(A) authorizes the court in a dissolution action to divide property held in joint tenancy, we reject Wife's contention that the superior court lacked jurisdiction over the Palomino residence. *See also Toth*, 190 Ariz. at 220 (rejecting appellant's argument that

court "must treat her share of property held in joint tenancy as separate property upon dissolution").

**¶18** Wife argues, next, that the superior court erred in characterizing the Palomino residence as community property.

**¶19** The Decree describes the Palomino residence as the "[m]arital residence located at [street address], Gilbert, AZ, 85296, *which is community property*." (Emphasis added.) The Decree goes on, however, to state that

> [t]he parties took title to the home as joint tenants when still single persons. They never redeeded the property, but the Court finds that forming the marriage community did not change the undivided 50% interest in the property that each owned.

A review of the Decree as a whole, therefore, makes clear that despite the erroneous use of the term "community property," the court understood that the Palomino residence was held in joint tenancy. In any event, joint tenancy property and community property are treated alike in dissolution cases. *Toth*, 190 Ariz. at 220. We therefore agree with Husband that the superior court's erroneous reference to "community property" was "harmless and did not affect either party's substantial rights."

**¶20** Wife next argues that because she contributed $85,000 toward the $100,000 down payment, she should have received 85% of the sales proceeds. "The parties did not intend to gift to each other equal ownership in the property," she contends, and so it was "not fair and equitable to order both parties to equally share in the net sale proceeds."

**¶21** Upon their acquisition of the residence as joint tenants, Husband and Wife each acquired a one-half interest in the property. *See Superior Court*, 188 Ariz. at 373 ("Joint tenants hold an equal, undivided interest in the subject property."); *Tenancy*, Black's Law Dictionary (11th ed. 2019) (defining "joint tenancy" as "[a] tenancy with two or more coowners who are not spouses on the date of acquisition and have identical interests in a property with the same right of possession."). The court therefore did not abuse its discretion in dividing the residence's net sale proceeds equally between the parties. Indeed, the court would have abused its discretion had it adopted Wife's proposal to divide the sale proceeds in proportion to the parties' initial contributions toward the purchase price. *See Valladee v. Valladee*, 149 Ariz. 304, 311 (App. 1986) (holding that court abused its discretion in making a substantially unequal division of real property that spouses held in joint tenancy "solely in order to reimburse husband for

expending his separate funds to acquire" the property); *Whitmore v. Mitchell*, 152 Ariz. 425, 427 (App. 1987) ("[A]bsent an agreement to the contrary, a court may not, upon dissolution, order a substantially unequal division of joint tenancy property solely for the purpose of reimbursing one of the parties for expending his or her separate funds to initially acquire the property.").[3]

### b. Husband's Affidavit Terminating Right of Survivorship

**¶22** Wife argues that the superior court erred in denying her Rule 85(b) motion, insisting that Husband's post-trial recording of the affidavit terminating right of survivorship under A.R.S. § 33-431(E) supports her claim to 85% of the proceeds from the sale of the Palomino residence. The recording of the affidavit, she explains, "converted their [joint tenancy] ownership into a tenancy in common," "a form of ownership in which each co-tenant owns a separate fractional share" of the subject property. Because the recording of the affidavit left the parties "tenants in common," they were each entitled to an interest "in the sale proceeds in proportion to their initial contributions [to] the purchase of the property." We review the "denial of a motion for relief from judgment under Rule 85 for an abuse of discretion, giving deference to the superior court's factual findings." *Johnson v. Edelstein*, 252 Ariz. 230, 233, ¶ 12 (App. 2021).

**¶23** "Joint tenancy requires the presence of . . . four unities: time, title, possession, and interest." *Estate of Estelle*, 122 Ariz. at 111. Action by a joint tenant that severs any of the four unities "severs the joint tenancy relationship, leaving the joint tenants as tenants in common." *Brant v. Hargrove,* 129 Ariz. 475, 478 (App. 1981). A joint tenant can unilaterally sever a joint tenancy in various ways, including by filing an affidavit with the county recorder terminating the right of survivorship. A.R.S. § 33-431(E).

**¶24** Husband's recording of the affidavit thus converted the parties' joint tenancy of the Palomino residence to one of tenancy in common. The severance of the joint tenancy did not, however, alter the one-half interest in the Palomino residence that each party held at the time of the severance. *See Register v. Coleman*, 130 Ariz. 9, 12 (1981) (finding that mother "destroyed" the "joint tenancy ownership" and transferred her

---

[3] After Oral Argument, Wife filed a supplemental notice of legal authority citing *Duston v. Duston*, 498 P.2d 1174 (Colo. App. 1972) and *Jezo v. Jezo*, 127 N.W.2d 246 (Wis. 1964) in support of her position. To the extent these out-of-state cases support a result different from the one required by the Arizona authorities cited herein, we decline to follow them.

"one-half, undivided interest" in residence, which she owned in joint tenancy with son, upon quitclaiming her interest to daughters); *see also In re Estate of Bates*, 492 N.W.2d 704, 707 (Iowa Ct. App. 1992) (holding that former spouses became tenants in common, each with "an interest in one-half of the property," upon severance of joint tenancy); *Olney Tr. Bank v. Pitts*, 558 N.E.2d 398, 401 (Ill. App. Ct. 1990) (holding that husband severed joint tenancy by conveying his interest in property to bank, leaving bank and wife each with a half interest). The superior court correctly found that "[c]onverting the joint tenancy to tenancy in common in February 2022[] still [left] each spouse with an entitlement to 50% of the net proceeds of that asset upon sale."

¶25 Wife further contends that she was entitled to relief under Rule 85(b) because Husband purportedly engaged in misconduct by failing to notify her and the court that he had recorded the affidavit terminating right of survivorship, leaving the court under the misconception, when it entered the Decree, "that the [Palomino residence] was held in joint tenancy rather than as a tenancy in common."

¶26 We disagree. Consent of the other joint tenants is not required to convert a joint tenancy into a tenancy in common. *See Lonergan v. Strom*, 145 Ariz. 195, 198 (App. 1985); A.R.S. § 33-431(E). Nor is personal notice required; merely recording the affidavit provides "notice to all persons of [its] existence." A.R.S. § 33-416. Wife cites no authority requiring Husband to notify the court when he recorded the affidavit terminating right of survivorship, and we are aware of none.

¶27 Further, we agree with Husband that he cannot be said to have acted improperly by recording the affidavit terminating right of survivorship to ensure that "his share of the Palomino residence would be distributed to his family rather than Wife if he were to unexpectedly pass away before the decree was entered." Husband's actions did not violate A.R.S. § 25-315, which enjoins the parties to a dissolution from "transferring, encumbering, concealing, selling or otherwise disposing of" joint property. That statute serves to "preserve the property of the marital estate and to keep it within the reach of the court, pending a considered determination of how it should be divided." *Lonergan*, 145 Ariz. at 199. Husband's severance of the joint tenancy did not remove the Palomino residence from the marital estate. A transaction that merely changes the "form in which the parties held title to the marital property" without removing it from the marital estate is not prohibited by A.R.S. § 25-315. *See id.* at 198-99.

¶28　　　　The severance of the joint tenancy terminated Wife's right of survivorship but otherwise left unaffected each party's one-half interest in the Palomino residence. *See* A.R.S. § 33-431(E); *see also Register*, 130 Ariz. at 12 (noting that joint tenant can sever the joint tenancy by conveying his interest but cannot convey the entire estate unless authorized by co-tenant). Thus, Husband's recording of the affidavit did not deprive Wife of her interest in the Palomino residence or otherwise constitute improper conduct entitling Wife to relief under Rule 85(b). We agree with the superior court that Husband's recording of the affidavit terminating right of survivorship "is of merely trivial import" and find that the court did not abuse its discretion in denying Wife's Rule 85(b) motion.

### *c. Separate Contributions Made Toward the Palomino Residence*

¶29　　　　Husband and Wife both contend that they are entitled to reimbursement for the contributions they made with their separate funds toward expenses for the Palomino residence. The court ordered no such reimbursement in the Decree, thereby tacitly denying each party's request. *Chopin v. Chopin*, 224 Ariz. 425, 431, ¶ 22 (App. 2010) (deeming request for award of attorney fees that "trial court did not rule on" denied). We review the issue of reimbursement under the clearly erroneous standard. *Hrudka v. Hrudka*, 186 Ariz. 84, 94 (App. 1995), *superseded by statute on other grounds as stated in Myrick v. Maloney*, 235 Ariz. 491, 494, ¶ 8 (App. 2014) ("The question of reimbursement" for payment of community debts with separate funds "is a factual issue . . . subject to the clearly erroneous standard.").

¶30　　　　Wife argues that she "presented evidence at the trial that she had paid over $25,000.00 from her sole and separate funds for repairs and maintenance to the residence" and was entitled to "reimbursement for those contributions." Husband likewise argues that he is entitled to reimbursement in the amount of $10,598.98 for the mortgage payments he made prior to the marriage and after the marital community terminated.

¶31　　　　"Under the general rules of joint tenancy, a tenant has a right to contribution from his cotenants for expenditures or obligations made for the benefit of the common property." *Valladee*, 149 Ariz. at 309. No such right to contribution exists, however, unless "there existed a common obligation or liability among the cotenants at the time the contributing tenant made the expenditure." *Id.* Here, the expenses for which each party seeks reimbursement were not a common obligation of the parties because they had agreed that Wife would pay some of the expenses in exchange for Husband's payment of certain others. Because the parties agreed that they would each be responsible for paying certain expenses for the residence

using their separate funds, the court did not err in failing to award either party reimbursement for expenses paid with separate funds.

**¶32** "Where a co-tenant makes improvements in good faith, which are permanent and useful or necessary to the enjoyment of the property, the court as a general rule awards him the resulting increase in the value of the estate." *In re Marriage of Berger*, 140 Ariz. 156, 163 (App. 1983). Wife invokes this principle on appeal, arguing that if she cannot recover "the actual cost of the improvements," she is entitled to the "resulting increase in the value of the estate." Wife never asserted a claim for a share of the enhanced value of the residence during the proceedings below, however, and so any such claim is waived. *See BMO Harris Bank N.A. v. Espiau*, 251 Ariz. 588, 593-94, ¶ 25 (App. 2021) (explaining that legal theories not presented to the trial court are waived on appeal).

**¶33** In any event, Wife presented no evidence at trial of the Palomino residence's purportedly enhanced value nor suggested a means of calculation, rendering it impossible to make any determination of the residence's allegedly enhanced value resulting from her expenditure of her separate funds. We therefore reject Wife's alternative claim for reimbursement based on the purportedly enhanced value of the Palomino residence.

## II.     Distribution of Other Property

### a.   *The 3746 Account*

**¶34** Arguing that the evidence at trial established "that [the 3746 account] consisted of her sole and separate funds," Wife contends that the superior court improperly characterized the 3746 account as community property. We review the court's classification of property *de novo*. *Bell-Kilbourn*, 216 Ariz. at 523, ¶ 4.

**¶35** The entire balance in an account in which community and separate funds are commingled is presumed to be community property "unless the separate property can be explicitly traced." *Cooper v. Cooper*, 130 Ariz. 257, 259 (1981) (citation omitted). Although Wife does not dispute that community funds were deposited into the 3746 account during the marriage, she asserts that at trial she was "able to trace her sole and separate funds such that commingling did not occur."

**¶36** The record does not support Wife's assertion. Wife testified at trial that community funds were deposited into the 3746 account and that funds in the account were used to pay community expenses. She further

testified that the $100,000 balance in the account in January 2018 represented the proceeds of her sale of the residence she owned before the marriage but admitted that she did not know the amount of community funds that were subsequently deposited into the 3746 account during the marriage. Moreover, the monthly bank statements from the 3746 account that Wife presented as exhibits at trial are incomplete, and so do not permit the tracing of deposits and withdrawals.[4]

¶37　　　Wife argues that the amount of community funds deposited into the 3746 account was "negligible" and therefore the funds in the account were never transmuted from separate to community property.

¶38　　　An account established by one spouse prior to marriage may retain its character as separate property if the amount of community funds deposited into it is "negligible." *Noble v. Noble*, 26 Ariz. App. 89, 95-96 (App. 1976). As the party that invokes this principle, Wife bears the burden of rebutting the presumption that the 3746 account is community property by clear and convincing evidence. *See Cooper*, 130 Ariz. at 259-60.

¶39　　　Wife cannot be said to have met her burden of proof. She admitted that she did not know the amount of community funds that were deposited into the 3746 account during the marriage. The monthly bank statements that Wife presented, though incomplete, make clear that the balance in the 3746 account fluctuated widely, from $84,382.63 as of February 13, 2018 down to $25,167.87 as of November 14, 2018, before increasing to $39,064.23 as of February 10, 2021. The record provides no evidentiary support for Wife's contention that the amount of community funds deposited into the account could be considered negligible. Because community and separate funds were commingled in the account and no tracing of separate funds is possible, the funds in the account transmuted into community property by operation of law. *See Porter v. Porter*, 67 Ariz. 273, 281 (1948), *overruled in part on other grounds by Cockrill v. Cockrill*, 124 Ariz. 50, 53-54 (1979) ("Where community property and separate property are commingled, the entire fund is presumed to be community property unless the separate property can be explicitly traced.") The Decree thus correctly characterized the 3746 account as community property.

　　　　　b.　*The Parties' Vehicles*

---

[4] All of the even-numbered pages are missing from the monthly bank statements that Wife provided, and statements for the three-month period, from August 16, 2019 through November 13, 2019, are missing entirely.

¶40     Wife claims that the superior court erred in characterizing the parties' vehicles as community property, insisting that she made a down payment on both vehicles "using her sole and separate funds." She does not dispute that monthly payments were "made using community funds during the marriage" but argues that "at most, the community was entitled to a lien for reimbursement of those payments."

¶41     Wife expressly identified the vehicles as community property in her petition for dissolution and her pretrial statement, and again at trial when she testified that the vehicles were purchased "under community property."[5] At no point did Wife claim that either vehicle was separate property, nor did she request reimbursement for her contributions toward the down payments for the vehicles. Wife has therefore waived this argument, and we need not address it further. *See Payne v. Payne*, 12 Ariz. App. 434, 435 (App. 1970) ("[A] matter raised for the first time on appeal will not be considered.").

         *c.   Community Funds in the Parties' Safe and Wife's Equalization Payment*

¶42     Husband testified at trial that when Wife notified him that she intended to file for dissolution, he counted the cash in the safe, which came to $9,230. He further testified that he later removed $400 from the safe to pay certain household expenses, but when he next counted the cash in the safe in April 2021, he found only $5,000. The Decree awarded Husband all of the $5,000 in the safe. Wife argues that the court erred in awarding Husband all of the cash in the safe, insisting that, despite Husband's implication that "Wife had taken the missing $4,000.00," there was "no evidence that Wife took any funds from the safe for her own purposes." Accordingly, she contends, she was entitled to one-half of the cash in the safe.

¶43     Wife reads too much into the Decree, which contains no finding, express or implied, that Wife removed $4,000 from the safe before filing the petition for dissolution. Indeed, the Decree makes no reference to either party's removal of cash from the safe. Instead, the Decree awards the remaining $5,000 in the safe to Husband as part of its overall division of marital property. Because A.R.S. § 25-318(A)'s provision that the court divide marital property "equitably" does not require the court to divide

---

[5] Specifically, Wife testified at trial, "even though I put 10,000 towards the vehicle that [Husband] drives, I believe that we still should equalize that, because it was under community property."

each marital asset in half, the court did not abuse its discretion in awarding the entire sum of cash in the safe to Husband as part of its overall division of marital property. *See Miller v. Miller*, 140 Ariz. 520, 522 (App. 1984) ("The apportionment of community property . . . need not be in kind or exactly equal, but must result in substantial equality."); *Lee v. Lee*, 133 Ariz. 118, 121 (App. 1982) ("The only inherent limitation on the power of the trial court to apportion community property is that the division, in the final analysis, must result in a substantially equal distribution which neither rewards nor punishes either party.").

**¶44**　　　　Wife argues that the $29,200 equalization payment ordered in the Decree should be set aside as unsupported by the evidence. She does not challenge the value that the court placed on the parties' assets but argues that the court erred in treating some of those assets—specifically, the 3746 account and the parties' vehicles—as community property. The court's improper "characterization of [her] sole and separate property" as community property, Wife contends, resulted in a miscalculation of the equalization payment.

**¶45**　　　　Because, as discussed above, the court properly classified the 3746 account and the parties' vehicles as community property, the court did not err in considering the value of those assets when calculating the amount of the equalization payment.

**¶46**　　　　In her opening brief, Wife states that the Decree does not explain the manner in which the court "arrived at [its] calculation of the [$29,200] payment." To the extent this passing statement constitutes a challenge to the calculation of the equalization payment, we find that Wife is entitled to no relief. The Decree awarded Wife financial accounts (including the 3746 account) with a combined value of $47,661.62, while the value of the accounts awarded to Husband, along with the cash in the safe, totaled only $14,727.45. Wife does not challenge the court's valuation or division of the parties' accounts. Further, the Decree contains findings that Wife's vehicle had a value of $35,000 while Husband's vehicle had a value of $11,578 subject to a $9,048.03 lien. The difference in values of the accounts and cash awarded to each party and the net value of each party's vehicle is $65,404.20, which is more than double the amount of the $29,200 equalization payment that the court ordered Wife to pay. As Husband correctly argues, the amount of the equalization payment "favored Wife, and [so] she has no basis" to challenge it. *Cf. Maffeo v. Wood*, 16 Ariz. App. 389, 393 (App. 1972) (holding that appellants "cannot complain of an error which is favorable to them").

## III.    Attorney Fees

### a.    Decree's Denial of Husband's Attorney Fees

¶47        In the Decree, the superior court denied each party's request for an award of attorney fees pursuant to A.R.S. § 25-324(A). In doing so, the court found that neither party "act[ed] unreasonably in the litigation." It further observed that, "[w]hile Wife has a greater net worth than Husband, the Court does not find that that disparity is a 'substantial' disparity justifying an award of attorney's fees."

¶48        Husband argues that the court "abused its discretion by denying [his] request for attorney's fees." He does not challenge the court's determination that neither party took unreasonable positions at trial but argues that the court erred in denying his fee request in view of "the significant financial disparity between the parties." "Wife's net worth," he explains, is "approximately ten times that of Husband." We will not disturb the superior court's determination of a fee request absent an abuse of discretion. *Myrick*, 235 Ariz. at 494, ¶ 6.

¶49        Although A.R.S. § 25-324(A) requires a court to "consider[] the financial resources of both parties" when evaluating attorney fees requests, it does not *mandate* an award of fees to the party of lesser means. *Myrick*, 235 Ariz. at 494, ¶ 9 ("[A] relative financial disparity in income and/or assets . . . alone does not mandate an award of fees." (citation omitted)). The purpose of A.R.S. § 25-324(A) is to "insure that the poorer party has the proper means to litigate the action." *Quijada v. Quijada*, 246 Ariz. 217, 222, ¶ 17 (App. 2019) (citation omitted). As long as neither party takes unreasonable positions, A.R.S. § 25-324(A) cannot reasonably be read to entitle either party to a fee award if both parties have sufficient means to litigate the action. *See Bobrow v. Bobrow*, 241 Ariz. 592, 599, ¶ 33 (App. 2017) ("Financial disparity alone does not mandate an award of attorney's fees to the poorer party."). The disparity in the parties' respective financial conditions thus did not entitle Husband to an award of attorney fees. We find no abuse of discretion in the denial of Husband's request for an award of attorney fees incurred through trial.

### b.    Husband's Attorney Fees Granted from Wife's Rule 85(b) Motion

¶50        Husband requested an award of attorney fees and costs of $2,103.11 incurred in responding to Wife's Rule 85(b) motion. Over Wife's objection, the court awarded Husband fees and costs of $1,000. On appeal, Wife asserts that the court erred in awarding such fees and costs to Husband because the court had "previously denied both parties' requests

for attorney's fees" and "[n]o explanation was given as to why Husband was awarded attorney's fees in responding to" her Rule 85(b) motion.

**¶51** The court's determination of the reasonableness of the positions the parties took at trial has no bearing on the reasonableness of Wife's post-trial Rule 85(b) motion. Further, the court's failure to articulate the basis for its fee award entitles Wife to no relief since "there is no obligation for the trial court to make findings of fact under A.R.S. § 25-324." *See MacMillan v. Schwartz*, 226 Ariz. 584, 592, ¶ 39 (App. 2011). In any event, the basis for the court's fee award is evident; Wife herself observes that, "[a]pparently[,] the award was based impliedly upon a finding that Wife had taken an unreasonable position in" her Rule 85(b) Motion.

**¶52** Although Wife insists that she "did not take an unreasonable position in pursuing her [Rule 85(b) motion]," the court did not abuse its discretion in making a contrary determination. While an abuse of discretion will be found "where there has been an error of law committed in the process of reaching a discretionary conclusion," *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 19 (App. 2009) (cleaned up), none will be found merely because another court might have reached a different conclusion in similar circumstances, *see In re Marriage of Inboden*, 223 Ariz. 542, 544, ¶ 7 (App. 2010). Moreover, the court awarded Husband less than half of the $2,103.11 he requested, making clear that, in awarding fees and costs, the court took into account Wife's arguments in opposition to Husband's fee request. Because the superior court "is in the best position to observe and assess the conduct of the parties before it," *MacMillan*, 226 Ariz. at 592, ¶ 38, we find no abuse of discretion and will not disturb the court's post-Decree award of fees and costs to Husband.

*c. Parties' Request for Attorney Fees on Appeal*

**¶53** Husband and Wife request attorney fees on appeal under A.R.S. § 25-324 and ARCAP 21. After considering the reasonableness of both parties' positions and their respective financial resources, we deny both parties' requests in the exercise of our discretion. *See Myrick*, 235 Ariz. at 496, ¶ 16.

## CONCLUSION

**¶54** For the foregoing reasons, we affirm the Decree in its entirety.



AMY M. WOOD • Clerk of the Court
FILED:    AA